**Leonard Marvin LAWS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 49530.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 4, 1986.

Motion for Rehearing and/or Transfer
Denied March 25, 1986.

Application to Transfer Denied
May 13, 1986.

**184**

Kathryn Shubik, Public Defender, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Movant was convicted by jury of capital murder pursuant to § 565.001 RSMo 1978 and the jury imposed the death penalty. The conviction was affirmed on appeal. *State v. Laws*, 661 S.W.2d 526 (Mo. banc 1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984). Thereafter, movant sought to have his sentence vacated under Rule 27.26. After an evidentiary hearing on movant's Rule 27.26 motion, the trial court denied relief. Movant appeals from the denial of his motion for post-conviction relief. Affirmed.

A full statement of the facts may be found in the report of the direct appeal. In brief, movant was jury convicted of two counts of capital murder, § 565.001 RSMo 1978, in connection with the deaths of Clarence and Lottie Williams. The evidence showed that the defendant and his companions willfully took the lives of this elderly couple to avoid detection of their robbery scheme. The jury found four statutory aggravating circumstances were present, § 565.012 RSMo 1982, and assessed the death penalty.

On appeal, movant raises two points of error. First, movant contends that the trial court failed to make specific findings of fact and conclusions of law regarding his claim of ineffective assistance of counsel based on defense counsel's decision to refrain from putting on evidence during the penalty stage in mitigation of the death penalty.

■ The issue of ineffective assistance of counsel due to the absence of mitigational evidence was first raised by the testimony of several witnesses during the November 16, 1984, evidentiary hearing on movant's Rule 27.26 motion. Movant presented the testimony of several witnesses, including his trial counsel, concerning the advisability of putting relatives and clergymen on the stand during the penalty stage of a capital murder trial to testify in mitigation of the death penalty. This testimony was received without objection by the state. Under the circumstances, we find that the issue was tried by the implied consent of the parties, and thus, will be treated as amending the Rule 27.26 motion to conform to the evidence. Rule 55.33(b); *Vidauri v. State*, 515 S.W.2d 562, 568 (Mo.1974); *Cowans v. State*, 656 S.W.2d 803, 804 (Mo.App. 1983).

After hearing the evidence, the trial court made the following findings of fact and conclusions of law regarding the absence of evidence in mitigation of the death penalty:

> Tim Devereux contacted relatives of movant by calling a phone number movant supplied. Two different persons told Mr. Devereux that relatives would not testify on Mr. Law's behalf. Timothy Devereux was fully informed at the time of trial of the possibility of calling clergy persons and professors to give their views on the death penalty. Mr. Devereux decided after due consideration and

after calling such persons in the first trial of Leonard Laws that their testimony would not be beneficial to the case. Timothy Devereux protected Leonard Law's right to a fair trial through pretrial motions, adequate trial preparation, a skillful trial, and preservation of any points for appeal.

■ Rule 27.26(i) provides that the court shall make findings of fact and conclusions of law on all issues presented. Under 27.26(j) appellate review is limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous. *Battle v. State*, 674 S.W.2d 179, 180 (Mo.App.1984). In this regard, we have stated that where the findings of fact and conclusions of law sufficiently cover all points as to permit meaningful appellate review of the court's judgment, they are sufficiently specific. *McCoy v. State*, 610 S.W.2d 708, 709 (Mo. App. banc 1981). *Leigh v. State*, 673 S.W.2d 788, 790 (Mo.App.1984). We believe that the court's findings and conclusions on movant's motion for post-conviction relief are sufficient to review under Rule 27.26(j) whether attorney Devereux rendered ineffective assistance of counsel by refraining from presenting mitigational evidence during the penalty stage of movant's trial. *Fields v. State*, 572 S.W.2d 477, 483 (Mo. banc 1978); *Smith v. State*, 674 S.W.2d 638, 642 (Mo.App.1984); *Mercer v. State*, 666 S.W.2d 942, 947 (Mo.App. 1984).

Movant's point II contends that the trial court erred in finding he received effective assistance of counsel. First, movant asserts that his counsel failed to adequately investigate his psychiatric state by failing to ascertain the meaning of terms in movant's psychological evaluation.

■ To establish ineffective assistance of counsel, movant had to show that his attorney's performance did not conform to the degree of skill, care, and diligence required of a reasonably competent attorney under similar circumstances. In addition, movant was required to show that he was thereby prejudiced. *Strickland v. Wash-*

*ington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Seales v. State*, 580 S.W.2d 733, 735–737 (Mo. banc 1979); *Love v. State*, 670 S.W.2d 499, 501 (Mo. banc 1984). Under Rule 27.26(f) movant has the burden of establishing his grounds for relief by a preponderance of the evidence.

Movant's experienced criminal attorney, Timothy Devereux, received a psychiatric report by Dr. Bratkowski of the Fulton State Hospital prepared in connection with a separate murder charge against movant. Two other capital murder charges had been brought against movant. During the hearing on movant's 27.26 motion, attorney Devereux was questioned about the psychiatric report on movant. Close examination of the transcript reveals that attorney Devereux made a reasoned strategic decision based on all the circumstances to refrain from putting on evidence at trial of movant's psychiatric state. The pertinent part of the transcript is as follows:

Q. What were the results of this examination that you were aware of before the trial?

A. The findings were, from Roman Numeral VIII, that the accused had no mental disease or defect within the meaning of § 588.010, and that Leonard had the capacity to understand the proceedings against him and knew and appreciated the nature and wrongfulness of his conduct.

Q. And do they also, on page four of this document, talk about an evaluation in Mississippi and what the diagnosis there was?

. . . .

A. It states that he was given the diagnosis of anti-social personality and situational reaction of adult life.

Q. So the doctor in the examination you reviewed also considered this Mississippi evaluation, is that right?

A. Yes.

Q. Now, you said besides this examination in Defendant's exhibit B, you also considered Leonard Laws, his background, and your conversations with

him. And what did you glean from that, if anything?

A. Well, in my conversations with him I didn't detect—again, its a lay opinion. But I didn't detect any mental disease or defect that would interfere with our preparing to go to trial or for his standing trial.

Q. All right. *And so was that ever a plan, or a possible defense in your mind, a viable defense in any way to claim any mental disease or defect, based on your evaluation of this case?*

A. *Well, I considered it, but I rejected it.*

(Emphasis added)

Q. Did Leonard at any time ever insist that he should be evaluated, or that he was insane in any way?

A. I don't recall that, no.

. . . .

Q. Mr. Devereux, did you read through that psychiatric report when you represented Mr. Laws?

A. While I represented him, yes.

Q. And in that report, do you recall the term "situational reaction," that Mr. Laws suffered from problems with situational reactions?

A. Yes.

Q. And did you speak to the psychiatrist who prepared that report about what a situational reaction was?

A. No. I didn't.

Q. *And at this time, do you know what a situational reaction is?*

A. *A situational reaction does not rise to the level of mental disease or defect. I know that.*

Q. *But you did not investigate, at the time you represented Mr. Laws, exactly what a situational reaction was, what the scope of that was?*

A. *What the scope of it was, I have an understanding what it is. But I don't know the actual scope of it. And, again, I read it. It was in the context of the individual's finding that there was no mental disease or defect.*

Q. Right. But when you represented Mr. Laws and read this report, you did not at any time talk to a psychiatrist or psychologist about what types of incidents aggravate situational reactions?

A. No, I did not.

▮▮▮ The evidence at movant's 27.26 hearing convinces us that attorney Devereux made a careful and conscious choice against putting on psychiatric evidence during trial or at the penalty stage. Nothing made known to counsel during his representation of movant, and extensive interviews with him, suggested to counsel that presenting evidence of movant's psychiatric state would be of any benefit in his defense. Counsel had a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. at 2067. Counsel could have well reasoned that the jury would be more harsh with movant as a result of learning that his behavior could be erratic and violent. Contrary to movant's contention that counsel failed to ascertain the meaning and import of a "situational reaction," our review of the record leads to the conclusion that counsel was fully cognizant of the nature of this disorder and decided as a matter of sound trial strategy that it would not be helpful.

▮▮▮ Attorney Devereux's informed choice of trial strategy to refrain from presenting psychiatric evidence at trial or during the penalty stage rendered it unnecessary to engage in further inquiry into movant's psychiatric state. The manner in which trial strategy is applied does not provide an adequate basis for an attack on the effectiveness of one's counsel. *State v. Thomas*, 625 S.W.2d 115, 124 (Mo.1981); *Olds v. State*, 655 S.W.2d 818, 819 (Mo. App.1983). Thus, we do not find that movant met his burden of establishing by a preponderance of the evidence that attorney Devereux failed to exercise the skill and diligence of a reasonably competent attorney under similar circumstances.

Notwithstanding our finding that counsel's representation was well within prevailing professional norms, we fail to perceive any prejudice to movant as a result of counsel's trial strategy. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. at 2052 (1984); *Seales v. State*, 580 S.W.2d at 735–737 (Mo. banc 1979); *Love v. State*, 670 S.W.2d 499, 501 (Mo. banc 1984). During the penalty stage of movant's trial the jury found that at least three statutory aggravating circumstances within § 565.-012 RSMo 1982 were established by the evidence.[1] *See State v. Laws*, 661 S.W.2d 526, 532 (Mo. banc 1983). Under the circumstances, we can not conclude that there was a reasonable probability that but for counsel's decision to exclude evidence of movant's anti-social personality and adjustment reaction to adulthood the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rainwater v. State*, 676 S.W.2d 310, 311 (Mo.App.1984).

Movant next contends that he received ineffective assistance of counsel for the reason that trial counsel did not contact family members named by movant to testify on his behalf during the penalty stage. Attorney Devereux testified that movant gave him the phone numbers of several family members he thought might testify on his behalf during the death penalty stage. Counsel testified that he contacted a woman whom he believed to be movant's step mother. Counsel stated that she was adamantly opposed to testifying and stated that no other family members would testify. In addition, counsel was able to contact a brother who related he would not testify on behalf of movant.

The claim that an attorney's investigation of a case is inadequate must allege what specific information the attor-ney failed to discover, that reasonable investigation would have disclosed that information, and that the information would have aided or improved defendant's position. *Williams v. State*, 650 S.W.2d 17, 18 (Mo.App.1983); *Franklin v. State*, 655 S.W.2d 561, 565 (Mo.App.1983). After multiple attempts to obtain relatives to testify for movant at the penalty hearing he was able to contact a woman he believed to be movant's step-mother and a brother. Both persons stated unequivocally that they would not testify at the penalty hearing and that other relatives would also not testify. Movant himself testified that he personally wrote his brothers and father requesting them to testify on his behalf, but they failed to appear for trial. Furthermore, movant did not present family members as witnesses at the evidentiary hearing. Under the circumstances, we find that counsel engaged in an adequate investigation of movant's relatives, and that no favorable information appeared as a result. If an attorney believes that the testimony of a witness would not unequivocally support his client's position, it is a matter of trial strategy not to call him to the stand. *State v. Turner*, 623 S.W.2d 4, 12 (Mo. banc 1981); *Phillips v. State*, 639 S.W.2d 270, 273 (Mo.App.1982). Counsel was well aware of the helpfulness of favorable testimony by relatives during the penalty stage, as the record discloses, but unfortunately was faced with a situation where reasonable efforts revealed that movant's relatives were strongly opposed to testifying. The decision not to call them as witnesses was thus a matter of trial strategy. The manner in which trial strategy is implemented does not provide an adequate basis for an attack on trial counsel. *Radford v. State*, 663 S.W.2d 309 (Mo.App.1983). Nor has movant met his burden of showing prejudice to him as a result of counsel's

---

1. The jury found that the evidence established: (1) The defendant has a substantial history of serious assaultive convictions § 565.012.2(1). (2) The murder of each victim was committed while the defendant was engaged in the commission of capital murder of the other victim. § 565.012.2(2)

(3) The defendant murdered both Lottie and Clarence Williams for the purpose of receiving money or any other thing of monetary value. § 565.012.2(4)

*State v. Laws*, 661 S.W.2d at 532.

action. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984); *Seales v. State*, 580 S.W.2d 733, 735–737 (Mo. banc 1979). *Love v. State*, 670 S.W.2d 499, 501 (Mo. banc 1984).

We therefore conclude that movant was not denied effective assistance of counsel.

The judgment is affirmed.

CRIST and SNYDER, JJ., concur.