**Fred RUSSELL, Appellant,**

v.

**Jim JONES, Appellee.**

**Nos. 88–1944, 88–2022.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1989.

Decided Sept. 19, 1989.

Rehearing and Rehearing En Banc Denied Nov. 7, 1989.

Bruce C. Houdek, Kansas City, Mo., for appellant.

Patrick L. King, Jefferson City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Fred Russell appeals from a district court[1] order denying his application for a writ of habeas corpus brought under 28 U.S.C. § 2254. 679 F.Supp. 949. Russell, convicted in a Missouri state court of first degree burglary and armed criminal action, argues that he received ineffective assistance of counsel during those proceedings. He bases this claim on allegations that his attorney failed to call Russell's brothers as alibi witnesses and neglected to object to damaging evidence of previous crimes. Russell also contends that the state trial court should have suppressed his confession on the grounds that it was involuntary and made without a knowing and intelligent waiver of his fifth amendment rights. Finally, Russell claims that the state produced insufficient evidence to allow a rational jury to return a guilty verdict. Respondent Jones cross-appeals, arguing that the district court erred in denying the state's motion for payment of costs incurred in producing transcripts of the state court proceedings. We affirm the judgment of the district court.

Susan Chapman, an assistant public defender, was assigned to defend Russell following his arrest. She succeeded in having a rape charge dismissed, but the case went to trial on the remaining counts. Russell's first trial ended in a mistrial when the jurors were unable to agree on a verdict. The state moved forward with a second trial, relying primarily on the victim's testimony and Russell's own confession that he had broken into the victim's home and assaulted her. The victim was unable to directly identify Russell as her assailant, but she did recognize him as the individual who had attempted to break into her home fifteen days before the attack occurred. Chapman made no objection to this testimo-

1. The Honorable John W. Oliver, Senior District Judge for the Western District of Missouri.

ny. The jury returned a verdict of guilty on both counts, and Russell was sentenced to a total of thirty years imprisonment.

## I.

■ We first examine Russell's claim that his confession should have been suppressed, since the resolution of this question affects the remaining issues. Russell claims that the use of his confession at trial violated his fifth amendment privilege against self-incrimination and the fourteenth amendment due process clause. Although he signed a statement that he understood his rights and waived them, he claims that he was not competent to knowingly and voluntarily take this action. He points to his extremely low reading ability, evaluated as being at the first or second grade level, and contends that he only signed the waiver form and confession because the police told him he "had to," that he could go home once he had done so, and that the judge would "go easy on him" if he cooperated. He informed his counsel of fearing that the police would beat him if he did not confess, but he did not claim that they actually threatened him. Russell was eighteen years old at the time, a senior in high school.

■ The fifth amendment privilege against self-incrimination may be waived, if that waiver is knowing, intelligent, and voluntary. *Colorado v. Spring*, 479 U.S. 564, 572, 107 S.Ct. 851, 856, 93 L.Ed.2d 954 (1987). A waiver may satisfy this standard only if made free from any coercion or deception, and "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)). We find nothing in the record to suggest that Russell's waiver did not meet this standard. Although Russell does possess limited verbal skills, there was no evidence to suggest that he could not comprehend why he was being questioned and the probable results of that

questioning. Further, there were no findings of police misbehavior.

■ The issue of the voluntariness of Russell's confession is a legal inquiry requiring plenary review. *See Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). The situation must be evaluated in light of the totality of the circumstances, "considering the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused." *United States v. Wilson*, 787 F.2d 375, 380–81 (8th Cir.), *cert. denied*, 479 U.S. 857, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986). Additionally, a confession may not be found to have been involuntary absent a showing of coercive police activity. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). Again, after reviewing the evidence concerning Russell's interrogation, we are unable to conclude that the police engaged in inappropriate conduct. Russell failed to show that his statements were prompted by any improper threats, promises, or actions by the interrogating officers. The confession was thus properly allowed into evidence at trial.

## II.

■ We next consider Russell's sixth amendment ineffective assistance of counsel claims. His first claim is that his two brothers were willing and able to testify as to an alibi defense, but that his attorney negligently failed to utilize this course of action. Both brothers testified before the district court that Russell's normal routine was to return from school, do his chores, attend practice with a local garage band, and arrive back at home by 10:00 to 10:30 p.m. Both brothers remembered him returning home the night of the crime, but neither could be sure of the time. Russell testified that he informed Ms. Chapman, his attorney, of these facts, but she failed to act on them.

Ms. Chapman testified that Russell had never informed her of a possible alibi defense, and that she first heard of it when Russell mentioned it during cross-examination in the second trial. She conversed

repeatedly with Russell's mother and two brothers, but they never mentioned such a possible defense. Further, after questioning the brothers about their possible testimony she decided against using them as witnesses, since their recollections were so vague that she judged them to be more harmful than helpful.

Our standard for reviewing ineffective assistance of counsel claims is provided by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on such claims, a defendant must show both a deficient performance on the part of counsel and a likelihood that the trial outcome would have been different absent the error. *Id.* at 687, 104 S.Ct. at 2064. Russell has failed to satisfy either of these requirements. As we have already discussed, the jury was properly allowed to hear Russell's confession at the trial. Confessions carry great weight, and it is therefore unlikely that Russell was prejudiced by the absence of his brother's testimony.

■ Moreover, even assuming that the jury might possibly have been persuaded by this testimony, we are satisfied that Ms. Chapman's performance was not deficient. The district court made explicit findings that her testimony was more credible than that of Russell and his brothers, and those findings were not clearly erroneous. An attorney's decisions on what to investigate are accorded heavy deference, *id.* at 691, 104 S.Ct. at 2066, and we cannot say that Ms. Chapman failed to carry out her duties. Repeated conversations with Russell and his family turned up no alibi, but instead only vague, largely unhelpful testimony. As the district court correctly found, Ms. Chapman made the most of the case with the information she was given, and had no reason to suspect any further defenses existed.

■ Russell's other ineffective assistance claim centers on Ms. Chapman's failure to object to the victim's testimony that Russell had broken into her home fifteen days before the attack. Again applying *Strickland*, we are unable to find that Russell has established both deficient conduct and prejudice. First, Missouri law allows evidence of other crimes by the defendant to be used if that evidence helps to establish guilt for the charges currently faced. *See Manning–El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). The performance of an attorney is not deficient for failure to object to admissible evidence. Second, even if the evidence were inadmissible, the other evidence against Russell was so great that he could demonstrate no prejudice. Accordingly, we reject Russell's sixth amendment claims.

### III.

Finally, we evaluate the sufficiency of the evidence used to convict Russell. Applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we are satisfied that the evidence was more than sufficient. *Jackson* does not allow courts examining the record on collateral review to substitue their judgment for that of the jury, but instead asks only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. Following a guilty verdict, all evidence must be viewed in a light most favorable to the prosecution. *Id.* We have already held that Russell's confession was properly admitted into evidence. As the district court correctly pointed out, this evidence alone satisfies the *Jackson* standard. We therefore affirm the judgment of the district court with respect to Russell's appeal.

### IV.

■ The state's cross-appeal concerns the district court's refusal to require the United States to pay for transcript fees of state court proceedings.[2] The district court originally entered a show cause order

2. Russell understandably takes no position on this issue. The United States, at our request, has filed a response to the arguments.

on March 6, 1987, requesting that all documentary evidence, including transcripts of proceedings connected to the challenged conviction, be attached to the state's response. Although the state then produced a number of exhibits, it did not file the transcript of the suppression hearing. On April 10, 1987, another order was entered, but the state again failed to attach a copy of the transcript. The district court entered a final order on June 17, 1987, specifically directing the Attorney General to prepare, serve, and file an additional response attaching the transcript of the suppression hearing. The transcript was filed on August 3, 1987, and four days later the state filed the present motion for fees under the federal court reporter statute. 28 U.S.C. § 753(f).[3]

The district court rejected the state's claim for reimbursement of expenses under section 753(f). It first pointed out that, contrary to the state's allegation, it had not certified the case as presenting a substantial question on appeal within the meaning of section 753(f). It further stated that section 753(f) did not apply because the statute only allows payment of transcript fees after a notice of appeal has been filed. The court finally stated that 28 U.S.C. § 2254(c) and Rule 5 of the rules for section 2254 cases place upon the state a duty to produce all necessary transcripts for the court's consideration of Russell's habeas corpus petition, and that neither section 2254 nor Rule 5 authorized the court to enter an order directing the United States to pay fees for transcripts of state court proceedings.[4]

The state now argues that it has fully met all of the requirements of 28 U.S.C. § 753, and the United States should have been made to pay the transcript fees. Although the district court held that section 753(f) did not apply because Russell had not yet appealed the denial of his habeas corpus petition, the state contends that the petition for writ of habeas corpus in the United States district court should be treated "as amounting to an appeal" for purposes of the statute. The state's argument is that the federal district court proceeding under 28 U.S.C. § 2254 is in essence an appeal from the state court post-conviction procedures, citing *Hoover v. United States*, 416 F.2d 431, 432 (6th Cir.1969). We have held, however, that petitioning for writ of habeas corpus under 28 U.S.C. § 2254 is not a substitute for an appeal. *Sherrill v. Wyrick*, 524 F.2d 186 (8th Cir.1975), *cert. denied*, 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332 (1976). The petition for the writ in federal court, while it may engage in some similar inquiry, performs a different function than state post-conviction procedures. To sustain the state's argument would deny the independence and significance of state court post-conviction proceedings in our constitutional system.

Turning to Rule 5, of the rules for section 2254 cases, the state argues that while Rule 5 places the burden of producing a transcript on the state, it does not indicate that the state must bear the cost of furnishing the transcript. The state recognized that the habeas petitioner bears the burden of demonstrating that he is entitled to relief under 28 U.S.C. § 2254(a). As the

**3.** Section 753(f) provides, in relevant part:

Each reporter may charge and collect fees for transcripts requested by the parties, including the United States, at rates prescribed by the court subject to the approval of the Judicial Conference. * * * Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. * * * Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the

trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question). * * *

**4.** The district court also observed that its memorandum opinion of June 17, 1987, had stated that the transcript of the suppression hearing had apparently been prepared and was available to the trial judge at the time he heard additional testimony and considered Russell's motion for a rehearing on the suppression issue. The transcript of those proceedings demonstrated that Russell's trial counsel made specific reference to the transcript of the initial suppression hearing in her cross-examination of Police Officer Gibson.

produced transcript was used by Russell to fulfill this burden of proof, the state contends that it is therefore appropriate that the United States pay the transcript fee for the in forma pauperis petitioner under section 753(f). We are not persuaded. 28 U.S.C. § 2254(e) specifically requires that the state produce records when because of indigency the applicant is unable to do so, and that the "Federal court shall direct the State to do so by order directed to an appropriate state official." We think this provision is particularly applicable to the circumstances in this case, where a transcript of the suppression hearing had evidently existed and was used in a later state proceeding, but for some reason was prepared a second time for the habeas corpus proceeding. 28 U.S.C. § 2254(e) and Rule 5 do not support the statutory argument.

The state further argues that it has satisfied the section 753(f) requirement which mandates that the appeal be certified as presenting a substantial question. The state maintains that while the district court did not expressly state that a substantial question existed, its granting of in forma pauperis status and its issuance of a show cause order confirm that the appeal was not frivolous and that a substantial issue was presented within the meaning of the statute. The files and record in this case do not in any way suggest that the district court certified that the appeal was not frivolous. The state's argument clearly ignores the district court's denial that it "entered any order that purported to make a section 753(f) certification."

Finally, the state argues that our decision in *Thompson v. Housewright*, 741 F.2d 213 (8th Cir.1984), requires the United States to pay the transcript fees under section 753(f). We agree with the district court that *Thompson* is procedurally inapposite. *Thompson* involved an appeal from the denial of a writ of habeas corpus in the district court, where the petitioner argued that the district court erred in failing to consider his claim of ineffective assistance of counsel or his motion to produce the state transcript. This court agreed, ordered that a transcript be prepared and produced, and its opinion expressly con-

tained a section 753(f) certification that the claim was not frivolous and presented a substantial question. The United States was then ordered to pay for the transcript fees. In this case, to the contrary, the state produced for the district court the transcript of the suppression hearing, and when the state later filed a motion for the payment of transcript fees under section 753(f), the district court denied the state's motion and specifically denied having made the required certification. We should not engage in an exercise that would transform orders entered by the district court into a certification, especially when the district court was empowered to make such a certification but specifically denied making it. *Thompson* does not bear the weight the state would place on it. We cannot conclude that the district court erred in denying the state's motion under section 753(f) to require the United States to pay for transcript fees of the state court suppression hearing.

Accordingly, we affirm the judgment of the district court.