**Milton Rene COUCH, Appellant,**

v.

**Myrna TRICKEY,**
**Superintendent, Appellee.**

**No. 88–1925.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1989.

Decided Dec. 28, 1989.

Dorian Amon, St. Louis, Mo., for appellant.

Patrick L. King, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, and BOWMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Milton Rene Couch appeals *in forma pauperis* the district court's [1] dismissal of his petition for a writ of habeas corpus

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of    Missouri.

under 28 U.S.C. § 2254 (1966). Couch contends that the district court erred in concluding that trial counsel was not ineffective for failing to pursue a trial defense of lack of capacity due to mental illness.[2] We find the district court properly concluded that intoxication without psychosis did not constitute a "mental disease or defect" amounting to mental illness in mitigation of criminal responsibility within the meaning of the Missouri Mental Responsibility Act, Mo.Rev.Stat. §§ 552.010–552.020 (1969) and affirm the dismissal of Couch's petition.

### I.

On October 5, 1976, Couch was convicted of first degree murder[3] and sentenced to life imprisonment in St. Louis County, Missouri. The Missouri Court of Appeals affirmed the conviction. *State v. Couch,* 567 S.W.2d 360 (Mo.App.1978). Couch moved for post-conviction relief, pursuant to Missouri Supreme Court Rule 27.26,[4] on the ground that trial counsel's failure to pursue a mental illness defense constituted ineffective assistance. The St. Louis circuit court denied the motion after an evidentiary hearing. The Missouri Court of Appeals affirmed the circuit court's evidentiary and legal conclusions made in the collateral proceeding.[5]

In the instant case, Couch petitioned the district court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of counsel in violation of the sixth amendment. Couch claimed that trial counsel failed to (1) adequately investigate a potential "mental disease or defect," the discovery of which would have negated Couch's capacity to stand trial, and (2) failed to interview prosecution witnesses. The district court adopted the magistrate's report and recommendation,[6] dismissed the petition and denied Couch's motions for a certificate of probable cause and appointment of counsel.[7] On Couch's initial appeal, we ordered the district court to make an evidentiary record[8] regarding trial counsel's investigation of potential defenses, since the circumstances involved intoxication that might have negated the specific intent necessary

---

2. Couch asserts mental disease or defect based on voluntary intoxication.

3. Mo.Rev.Stat. § 559.010 (1939) defined first degree murder as murder "committed by ... willful, deliberate and premeditated killing." Premeditation and deliberation were necessary elements of this specific intent crime.

4. Rule 27.26 was repealed effective January 1, 1988. Post-conviction relief in Missouri is now available pursuant to Missouri Supreme Court Rule 29.15.

5. *Couch v. State,* 664 S.W.2d 233 (Mo.App.1983). At the evidentiary hearing, a St. Vincent's Hospital psychiatric report, compiled pursuant to a defense motion, precipitated by Couch's admission of drug and alcohol use, was introduced. The report indicated that Couch was not disoriented, showed no signs of thought disorder, and did not suffer from hallucinations, delusions or any mental disorder. The psychiatrist discovered nothing that would serve to negate responsibility for criminal conduct. After reviewing the report, the Missouri Court of Appeals concluded that Couch failed to show counsel was ineffective in not investigating a mental illness lack of capacity defense due to a "mental disease or defect" caused by intoxication.

6. Order, No. 87–493C(2) (E.D.Mo. May 31, 1988). The Report and Recommendation of United States Magistrate Carol E. Jackson, No.

87–493C(2), February 4, 1988, concluded that Couch was not prejudiced by trial counsel's failure to investigate and present a defense of mental illness when the records supported a diagnosis of alcoholism without psychosis.

7. Memorandum and Order, No. 87–493C(2) (E.D.Mo. June 20, 1988).

8. Order, No. 88–1925 (8th Cir. Aug. 24, 1988). The purpose of the evidentiary hearing was to take the testimony of Joseph S. Beatty, trial counsel, regarding trial preparation, investigation and consultations with Couch to determine whether a basis existed for Couch's claim of ineffective assistance of counsel, specifically whether counsel thoroughly investigated the case prior to trial and considered potential defenses. Since counsel's actions are usually based on information supplied by the defendant, the reasonableness of investigative decisions depends upon such consultations. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The order requested that the magistrate review the record and make findings on these issues. Inquiry was to be made into whether counsel consulted with Couch, interviewed the prosecution's witnesses and considered defenses to mental culpability mitigating premeditation, an essential element of the crime charged. Order at 2; Evidentiary Hearing Transcript at 6.

for a conviction on a charge of first degree murder. We then granted Couch's application for a certificate of probable cause on the basis of facts, initially tending to support the ineffectiveness of counsel claim, found by Magistrate Jackson at the evidentiary hearing. However, we now affirm the district court's dismissal of Couch's petition for habeas corpus relief.

## II.

Couch entered a bar in St. Louis, Missouri, on the afternoon of May 2, 1975, acted irrationally and drank excessively. Couch left the bar and returned around 8:00 p.m. While continuing to drink excessively, Couch engaged Rose Winn, a female patron, in a conversation. Couch repeatedly bumped into Charles Adams, who was seated on an adjacent barstool. Adams offered Couch his seat. Couch stared at him for several minutes. Then, in an attempt to divert Winn's attention, he bought her a drink. Couch pulled a gun, placed it next to Adams' head, and fired, fatally wounding Adams. Couch then fled.

On May 7, 1975, Couch was committed to the Veterans Administration Medical Center. When interviewed, Couch recounted a history of amnesia due to acute intoxication. Couch claimed not to remember the events of May 2, but indicated that he did not believe he could have killed Adams because he was in a hospital at the time of the shooting visiting his ailing wife. Couch admitted a drinking problem. The staff psychiatrist concluded[9] that Couch suffered from acute brain syndrome associated with alcohol intoxication and amnesia as a direct result, but was not psychotic.

On August 7, 1975, the St. Louis circuit court ordered Couch, pursuant to Mo.Rev. Stat. § 552.020 (1971),[10] to be admitted to the Maximum Security Unit of Fulton State Hospital to undergo a pretrial psychiatric evaluation to determine his capacity to stand trial. Couch was interviewed by a psychiatrist on August 12, 1975. The psychiatrist observed no obvious signs of mental disturbance or thought disorder, no inappropriateness of mood, orientation intact in all spheres, memory for both recent and remote events and no hallucinations or delusions. Couch denied responsibility for the offense charged but admitted to suffering from a manic-depressive condition which he directly attributed to a drinking problem. Couch indicated that he knew murder was wrong and punishable and, significantly, claimed to be able to control his conduct. Tests did not indicate any perceptual or motor abnormalities but did reveal a manipulative personality. Nursing notes supported a determination of a "very" good mental state. The psychiatrist diagnosed "no mental disorder."[11]

9. The VA Medical Center report indicated that Couch had been hospitalized previously as a result of acute intoxication. The report stated Couch was well-oriented in all three spheres, was in good contact and denied being mean, hostile or combative, except when under the influence of alcohol. Couch apparently also denied hearing voices or having paranoid delusions but admitted to previous alcoholic binges. The report noted Couch possessed low intelligence and concentrating power. The primary diagnosis was psychoneurotic disorder and anxiety with sociopathic components. The secondary diagnosis was alcoholism. Certificate of Evaluation of Milton R. Couch at 2 (September 17, 1975) (Plaintiff's Exhibit 2).

10. A psychiatric evaluation is ordered when a judge has reasonable cause to believe that the accused lacks mental fitness to stand trial. Under the Missouri statute, a person who lacked capacity due to "mental disease or defect" could not be tried. "Mental disease or defect" within the meaning of the Mental Responsibility Law

was defined as a congenital or traumatic mental condition or a disease but not alcoholism without psychosis. Therefore, an intoxicated or drugged condition absent psychosis did not constitute lack of capacity to stand trial.

11. The Fulton study stated in pertinent part:
VII. DISCUSSION
This examination of Mr. Couch finds him of average intelligence and in good touch with his surroundings. He shows no obvious signs of mental illness. He is fully aware of the crime with which he is charged although he tends to deny responsibility for it. There is a history apparently of alcoholism. His past diagnosis of manic-depressive illness diagnosed in a private mental hospital is not confirmed in this study. We have also reviewed records from three hospitalizations at a veterans hospital in St. Louis, the last of which occurred just five days after the alleged offense. In brief, those records found him to be without psychosis and without need for further hospitalization. They also note that he

The Fulton study was filed with the trial court indicating that "no mental disease or defect" existed. Original trial counsel did not object to the study within the statutorily prescribed period.[12] Therefore, since Couch was deemed capable of standing trial, the case was listed on the trial calendar.

Trial counsel consulted with Couch. Couch never contended that he suffered from psychosis as a result of alcoholism. In light of this fact and the fact that original trial counsel did not object to the Fulton study within the statutory period, trial counsel did not undertake to further investigate a mental illness lack of capacity defense based on "mental disease or defect." Trial counsel testified at the evidentiary hearing that in normal course, if a psychiatric report concluded that a defendant had no "mental disease or defect," was not psychotic, and was therefore deemed capable of standing trial, no follow-up would be undertaken unless the defendant exhibited obvious signs of mental disturbance.

### III.

Couch contends that he was denied effective assistance of counsel in violation of the sixth amendment. Specifically, Couch alleges that counsel failed to (1) properly investigate and assert the statutory mental illness defense of "mental disease or defect," pursuant to Mo.Rev.Stat. § 552.010

> had anxiety symptoms, sociopathic traits and also alcoholism. He was considered responsible for his conduct. That report is also descriptive of our current findings.
> VIII. FINDINGS
> 1) That the accused has no mental disease or defect within the meaning of Section 552.010.
> 2) That the accused has the capacity to understand the proceedings against him and can assist in his own defense.
> 3) That the accused did know and appreciate the nature, quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of the law.
> 4) That the accused does not require hospitalization pending further proceedings.
>
> .   .   .   .   .
>
> Certificate of Evaluation of Milton R. Couch at 4–5 (September 17, 1975) (Plaintiff's Exhibit 2).

(1969), (2) interview prosecution witnesses, and (3) assert intoxication as a mitigating factor affecting the degree of culpability, and asserted a "ludicrous" alibi defense.

■ Ineffective assistance of counsel is a mixed question of fact and law.[13] This court must independently review the district court's legal conclusions when considering an appeal in a habeas corpus proceeding. *Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir.1988) (en banc). However, the district court's findings of fact are only reviewable under the clearly erroneous standard. Additionally, a state court's specific factual findings made in the course of deciding an ineffectiveness of counsel claim are presumed correct pursuant to 28 U.S.C. § 2254(d). *See Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ Couch was charged with fatally shooting Adams in a bar. He was intoxicated at the time. In 1975, "mental disease or defect" constituted a mental illness which gave rise to a lack of capacity defense to criminal culpability in Missouri. "Mental disease or defect" was defined as a "congenital and traumatic mental condition as well as disease," but specifically excluded "alcoholism without psychosis." Mo.Rev.Stat. § 552.010 (1969). Therefore, intoxication or drugged condition was not a defense in mitigation of criminal responsibility.[14]

---

12. The study was not objected to within the statutory period of ten days. Mo.Rev.Stat. § 552.020(6) (1971).

13. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both the performance and prejudice elements of an ineffective assistance of counsel claim are mixed questions of fact and law. *Id.* at 698, 104 S.Ct. at 2070.

14. Couch does not argue on appeal that the Missouri statutory scheme was a violation of due process because it failed to provide that voluntary intoxication was a defense to a specific intent crime. Therefore, we do not reach the constitutional issue. A statutory intoxication or drugged condition defense, Mo.Ann.Stat. § 562.076 (1977), was later enacted. The later-enacted statute provided that a person who was in an intoxicated or drugged condition, whether from alcohol, drugs or other substance, was criminally responsible unless such condition (1) negated the existence of the mental states of

**1342**

The Fulton study found that Couch had no "mental disease or defect" within the meaning of § 552.010, knew and appreciated the nature, quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of law. The Fulton study incorporated by reference a medical report from the Veterans Hospital compiled seven days after the shooting. The VA Hospital report diagnosed Couch as suffering from acute brain syndrome associated with alcohol intoxication, accompanied by amnesia. The report concluded that Couch was not psychotic but was an alcoholic who suffered from sociopathic traits and anxiety symptoms. On September 26, 1975, Couch received a copy of the Fulton study. Trial commenced October 4, 1976.

Couch first argues on appeal that trial counsel was ineffective for failing to pursue a mental illness defense (i.e., lack of capacity to stand trial) based on "mental disease or defect." In *Laws v. Armontrout,* this court, en banc, concluded that trial counsel had conducted an adequate investigation into a possible mental illness defense, since the clinical evidence did not support a conclusion that a "mental disease or defect" existed.[15] The *Laws* court adopted the legal conclusions of the Missouri Court of Appeals on Laws' Rule 27.26 motion based on the state court's specific findings of fact.[16] Couch appealed from denial of his Rule 27.26 motion. The Missouri Court of Appeals undertook a *Laws* approach and concluded that the evidentiary record from the Rule 27.26 hearing did not support Couch's claim of ineffective assistance of counsel for failure to assert a mental illness defense based on "mental disease or defect."[17]

Couch did not suffer from a congenital or traumatic mental condition or disease. Couch never indicated to counsel that he suffered from psychosis as a result of alcoholism. Evidentiary Hearing Transcript at 16. Couch claimed to suffer from amnesia regarding the event attributed to voluntary intoxication. A claim of amnesia precipitated by voluntary intoxication after the fact is not sufficient evidence that the intoxication negated specific intent at the time of the shooting or rendered Couch involuntarily incapable of conforming his conduct to the requirements of law. The statutory intoxication or drugged condition defense did not exist. Couch's intoxicated state did not negate the necessary elements of deliberateness or premeditation. The record shows that Couch fixated on Adams for several minutes, then deliberately drew Winn's attention away by offering to buy her a drink, and then executed Adams in cold blood.

IV.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), articulated a two prong standard, which a petitioner must meet to prevail on an ineffective assistance of counsel claim seeking habeas corpus re-

purpose or knowledge, when such mental states were elements of the offense charged or of an included offense, or (2) was involuntarily produced and deprived [defendant] of the capacity to know or appreciate the nature, quality or wrongfulness of conduct or to conform conduct to the requirements of law. The present statute, as amended in 1983, only requires that the intoxicated condition be involuntarily produced and deprive the defendant of the capacity and ability to conform his conduct.

15. 863 F.2d 1377 (8th Cir.1988) (en banc). As in the instant case, trial counsel relied on a Fulton State Hospital psychiatric examination of the defendant which incorporated a previous determination that Laws did not suffer from a "mental disease or defect," knew and appreciated the nature, quality and wrongfulness of his conduct,

and was capable of conforming his conduct to the requirements of law.

16. *Laws v. State,* 708 S.W.2d 182 (Mo.App.1986). The Missouri Court of Appeals closely examined the transcript of the Rule 27.26 hearing to conclude as a matter of law that trial counsel made a reasoned, strategic decision not to assert a mental illness defense based on all the circumstances.

17. *Couch v. State,* 664 S.W.2d 233 (Mo.App. 1983). Specific factual findings made by a state court should be presumed true in a habeas corpus proceeding alleging ineffective assistance of counsel. *See Sumner v. Mata, supra.* In addition, the evidentiary hearing held at this court's direction by the magistrate refutes all claims of ineffective assistance of counsel.

lief. Under *Strickland,* a petitioner has the burden of proving that counsel's performance was not only deficient but that it prejudiced the defense to the extent of a deprivation of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. A reasonable probability must exist that, but for counsel's unprofessional errors, the result would have been different.[18] This court applied the *Strickland* standard in *Blackmon v. Armontrout,* 875 F.2d 164 (8th Cir.1989).

In order for counsel's performance to be "deficient" within the meaning of *Strickland,* conduct must fall below an objective standard of reasonableness.[19] In this area of inquiry, judicial scrutiny is highly deferential.[20] A strong presumption exists in

counsel's favor.[21] When determining reasonableness, this court must view conduct from the perspective of counsel at the time of the alleged ineffective assistance.[22]

*Strickland* also dictates that any deficiencies in counsel's performance be prejudicial to the defense so that the outcome of the proceedings cannot be relied on. *Id.* 466 U.S. at 692, 104 S.Ct. at 2067. An actual adverse effect on the defense is necessary. *Id.* at 693, 104 S.Ct. at 2067. Courts should determine prejudice on a case by case basis.

A review of the record [23] would not have suggested to counsel that Couch was psychotic. Alcoholism without psychosis was

---

**18.** *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability" of a contrary result is a probability sufficient to undermine confidence in the outcome of the case. In assessing prejudice, this court must assume the lower court reasonably, conscientiously and impartially applied the governing standards.

**19.** *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Reasonable conduct consists of conduct that a competent attorney would undertake under like circumstances.

**20.** *Id.* at 689, 104 S.Ct. at 2065. An act or omission of counsel is not necessarily unreasonable merely because the defense ultimately proves to be unsuccessful.

**21.** *Id.* Courts presume counsel's conduct fell within a wide range of reasonable professional assistance. A court may conclude that under the circumstances, the challenged action would be considered sound trial strategy. Effective assistance is not manifested in one course of conduct.

**22.** *Id.* Hindsight has a distortive effect. A court should reconstruct the circumstances surrounding the challenged conduct.

**23.** The records which were available to trial counsel for review in preparation for trial included the Veterans Administration medical report completed by a staff psychiatrist, and the certificate of competency filed by the clinical director of Fulton State Hospital, pursuant to the court's request under § 552.020. Evidentiary Hearing Transcript at 24. The medical report stated in pertinent part:

[Couch] was under the influence of alcohol and he doesn't remember that he killed a man.... The patient is well oriented in all three spheres. He is in good contact.... The patient gives a history of having amnesia off and on, and that usually happens when he is under the influence of alcohol.... He admits

having a drinking problem.... The patient, in this examiner's opinion, is not psychotic..... The patient must have *acute brain syndrome associated with alcohol intoxication* and was suffering from amnesia as a result of that.
Plaintiff's Exhibit 3 (emphasis added).

Counsel contends that he was not aware of the medical report. Evidentiary Hearing Transcript at 45. There was no evidence that Couch made counsel aware of its existence. However, the certificate, which references the medical report and which counsel admits to having reviewed, concluded in pertinent part:

III. MENTAL STATUS
... [N]o obvious signs of being disturbed.... Orientation is intact in three spheres.... Memory is intact for recent and remove events.... [N]o signs of a thought disorder. Hallucinations or delusions are not found.... No inappropriateness was seen in his mood....
VI. DIAGNOSIS
... NO MENTAL DISORDER
VII. DISCUSSION
... [I]n good touch with his surroundings.... [N]o obvious signs of mental illness.... There is a history apparently of alcoholism.... [W]ithout psychosis and without need for further hospitalization.... [H]ad anxiety symptoms, sociopathic traits and also alcoholism.... [C]onsidered responsible for his conduct....
VIII. FINDINGS
1) [A]ccused has no mental disease or defect within the meaning of section 552.010.
2) ... has the capacity to understand the proceedings against him and can assist in his own defense.
3) ... did know and appreciate the nature, quality and wrongfulness of his alleged conduct and was capable of conforming his conduct to the requirements of the law....
Plaintiff's Exhibit 2.

specifically excluded from the statutory definition of "mental disease or defect" and could not form the basis of a mental illness defense to criminal conduct. Couch's condition was not envisioned by § 552.010 as indicative of a lack of capacity to stand trial. Therefore, trial counsel's performance was not deficient under an objective standard of reasonableness for failure to investigate and assert an invalid defense. E.g., Russell v. Jones, 886 F.2d 149 (8th Cir.1989); Mercer v. Armontrout, 864 F.2d 1429 (8th Cir.1988); Cooley v. Nix, 738 F.2d 345 (8th Cir.1984). In addition, investigating and asserting an invalid defense would not have produced a substantial likelihood of a different result. No prejudice ensued.

## V.

■ At the trial, defense counsel asserted Couch's chosen defense of alibi.[24] The prosecution had numerous eyewitnesses to the shooting whose testimony would have nullified the alibi defense. Trial counsel made a tactical decision not to interview these witnesses, who would be available at trial. This decision was a practical choice based on informed and reasoned professional judgment.

The Strickland Court noted that "strategic choices made after less than complete investigation are reasonable to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 691, 104 S.Ct. at 2066. Counsel had a duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. The reasonableness of a decision not to investigate is analyzed under all the circumstances, affording great deference to counsel's judgment. A strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance and under the circumstances might be considered 'sound trial strategy.' Id. at 689, 104 S.Ct. at 2065 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Since a jury must decide the credibility of

eyewitnesses, the alibi defense was still viable at the time it was asserted.

It is clearly not unreasonable for an attorney to pursue a valid defense based on reasonable, professional judgment though it may ultimately prove unsuccessful. Id., 466 U.S. at 699, 104 S.Ct. at 2070. Trial counsel's conduct in the instant case can be distinguished from the conduct which shocked the conscience of this court in Eldridge v. Atkins, 665 F.2d 228 (8th Cir. 1981) (investigation would have produced strong evidence of a "substantial" defense).

## VI.

Trial counsel's conduct did not fall below the objective reasonableness standard of Strickland for determining deficiency of counsel's performance, or create prejudice serving to taint the fairness of the proceedings. Interviewing prosecution witnesses would not have created a reasonable probability of a different result and would have constituted investigation of the inapplicable statutory mental illness defense, which was properly made the subject of expert testimony.

Refraining from asserting or investigating an invalid defense was reasonable. Pursuing an invalid defense would not have created a reasonable probability of a different result. Therefore, Couch suffered no prejudice. Viewing counsel's conduct objectively, as mandated by Strickland, this court cannot find that performance was deficient or prejudicial. Couch's allegations are insufficient under the two-prong Strickland standard to establish ineffective assistance of counsel in violation of the sixth amendment.

We affirm the district court's dismissal of Couch's petition for a writ of habeas corpus.

LAY, Chief Judge, dissenting.

This is an unusual case in many respects. The record demonstrates that Milton Couch was convicted of first degree murder—a

---

24. Couch claimed he was visiting his wife in the hospital at the time of the murder.

crime he did not commit. Couch was sentenced to life imprisonment for killing a complete stranger in a bar in St. Louis on May 2, 1975. The evidence is undisputed that on the day in question Couch mixed drugs with alcohol and experienced complete amnesia regarding the events in question. Medical records show three extensive hospitalizations for acute intoxication, the last of which occurred just five days after the alleged offense. The facts indicate no motive or provocation for the crime. Although the prosecution presented many witnesses to prove Couch did the shooting, the undisputed evidence of Couch's excessive drinking and irrational actions was not revealed to the jury. The record is completely devoid of any evidence of the essential element of first degree murder: premeditation.

Petitioner has an eighth grade education. At sentencing he told the trial court that he had no memory of the events in question. In a panic he told his counsel that he could not have committed the crime because he was at the hospital visiting his sick wife. Counsel, a state public defender, blindly accepted his client's story. Without *any* investigation whatsoever he placed Couch on the stand to assert an alibi defense. In my judgment it borders on the incredible to find that counsel's decision *not to* investigate was based on a strategic choice. A strategic choice is a decision between reasonably investigated alternatives, not an uninformed decision to push ahead blindly with a defense of unknown merit. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] Our holding in *Eldridge v. Atkins,* 665 F.2d 228 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982), establishes that an attorney's decision not to

interview the prosecution's witnesses, justified by no reasonable excuse, amounts to constitutionally ineffective assistance of counsel. In *Eldridge,* investigating witnesses would have uncovered important facts relevant to asserting a defense of mistaken identity. We adopted the following ABA standard to review counsel's failure to investigate:

> "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. *The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty.*" (emphasis added)

*Id.* at 232 (quoting American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function § 4.1 (Approved Draft 1971)).

Counsel's preparation here fell grossly short of this standard and materially prejudiced the defendant. Counsel's failure to investigate prevented him from realizing the extreme weakness of Couch's claimed alibi. Counsel did not corroborate the purported alibi with Couch's wife, nor did he make any effort to investigate the state's witnesses. Such investigation would have revealed that eight witnesses were prepared to verify Couch's presence in the bar and his intoxicated and irrational state. One of the eight was an eyewitness who would confirm that Couch pulled out a gun,

---

1. In *Strickland,* the Court held that counsel's decision not to investigate potential character witnesses and psychiatric experts for the defendant was a valid strategic choice because counsel had a reasonably well-thought-out alternative plan. Counsel would rely on the defendant's bare statements in the record of the plea colloquy to suggest that defendant was experiencing acute emotional distress at the time of his killing spree. By limiting testimony to that already in the plea colloquy and not calling character witnesses or psychiatric experts, coun-

sel would prevent the state from introducing contrary and potentially damaging evidence. This strategic choice, according to the court, "was well within the range of professionally reasonable judgments." *Strickland,* 466 U.S. at 699, 104 S.Ct. at 2070. In the present case, by contrast, counsel's decision not to investigate witnesses was not based on a strategically sound decision to pursue a different course. Rather, he simply neglected to prepare the one defense he had chosen.

put it to the head of a complete stranger, and fired without provocation. Had counsel discovered these facts, he could have confronted Couch with the state's overwhelming evidence, and he would have perceived that the alibi was merely a story inspired by the panic of a poor, uneducated and scared individual. If the defendant had insisted on perjuring himself with this defense, the public defender had a duty to withdraw from the case. *Cf. Nix v. Whiteside*, 475 U.S. 157, 173–74, 106 S.Ct. 988, 997–98, 89 L.Ed.2d 123 (1986) (counsel's threat to withdraw or divulge perjury to court did not violate duty of confidence to client; counsel's duty was to the truth).

Had counsel made any reasonable effort to investigate, and discovered the utter weakness of the alibi defense, he would have recognized the urgent need to further pursue the issue of Couch's state of mind to commit the crime charged. The majority holds that counsel did not need to further press the issue of mental incompetence because the available medical reports showed Couch did not suffer psychosis. Under existing state law, it is claimed, alcoholism without psychosis could not be used to prove a mental disease or defect in mitigation of criminal responsibility. *See* Maj.Op. at 1342 (quoting Mo.Rev.Stat. § 552.020 (1969)). While indeed such a law would prevent counsel from asserting mental in-

capacity as a complete defense to the crime, that statute did not remove the state's duty to prove beyond a reasonable doubt that the defendant had sufficient premeditation to sustain a conviction for *first degree* murder. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").[2] If counsel had properly investigated the defendant's state of mind at the time of the crime, he would have uncovered a wealth of evidence and law to suggest premeditation was impossible in the circumstances of the case.

No doubt the state would have objected to the admission of evidence relating to Couch's intoxication at the time of the crime. Decisions of the Missouri Supreme Court at that time purported to bar admission of evidence of intoxication for the purpose of undermining premeditation. *See, e.g., State v. Richardson*, 495 S.W.2d 435, 440 (Mo.1973) ("[Missouri] does not even allow a jury to consider * * * intoxication on the issue of specific intent"). That rule, however, was of questionable constitutional validity, and no one had yet challenged it.[3]

---

**2.** *See also Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (Maine law violated due process by presuming malice aforethought upon a showing of intentional murder—rather than requiring proof beyond a reasonable doubt—and placing burden on defendant to prove by a preponderance of the evidence that he acted in the heat of passion, thereby reducing offense to manslaughter).

**3.** Although in 1975 no one had raised a due process attack against the Missouri statute, the Missouri Court of Appeals later heard argument challenging the rule's constitutionality, but the court decided the issue was not properly preserved for appeal. *State v. Hegwood*, 558 S.W.2d 378, 381 (Mo.Ct.App.1977). Proper preservation of the issue would have allowed it to be raised in this case. Even if the Missouri Supreme Court ruled against Couch on the constitutional claim, his counsel would have had a basis to petition the United States Supreme Court for certiorari, or bring the constitutional issue into federal court on a habeas petition. Even if ultimately unsuccessful, a clearly

spelled-out threat of a prolonged constitutional battle could have provided ammunition to plea bargain for a lesser charge such as second degree murder or manslaughter.

The United States District Court for the Western District of Missouri considered the constitutionality of the rule in a 1982 case. *Hindman v. Wyrick*, 531 F.Supp. 1103, 1112 (W.D.Mo.1982), *aff'd on other grounds*, 702 F.2d 148 (8th Cir. 1983). Although the court declared the rule not unconstitutional, the court offered only a one sentence pronouncement with no analysis, and in any case this questionable opinion did not yet exist at the time of Couch's trial.

Besides the potential constitutional infirmity of the Missouri rule barring evidence of intoxication to address premeditation, research by counsel would have revealed substantial criticism of the rule in contemporary legal literature. One scholar wrote in the Missouri Law Review in 1963:

> If one of the elements of a crime is that the defendant have as his purpose, the achievement of a certain result, or that he have

Due process requires the state to prove beyond a reasonable doubt every fact necessary to constitute the crime. *In re Winship*, 397 U.S. at 364, 90 S.Ct. at 1072. It is difficult to see how a rule that prevents the jury from hearing all the evidence necessary to determine the element of premeditation can survive due process scrutiny. Although the Supreme Court allows the states to shift the burden to the defendant to prove certain affirmative defenses, the Court still requires that the jury be instructed to consider all the evidence, including the evidence that relates to the affirmative defense, when deciding whether the prosecution has proven its case in chief. In *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), the Court found no violation of due process in a state law that, upon proof of aggravated murder, shifted to the defendant the burden of proving self-defense by a preponderance of the evidence. The Court emphasized, however, that in evaluating the prosecution's case in chief, the jury must be instructed to consider all the evidence, including evidence brought forth to prove self-defense, even if the jury did not find that self-defense was proven by a preponderance of the evidence. The Court wrote:

> It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the state's case, *i.e.*, that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such instruction would relieve the state of its burden and plainly run afoul of *Winship*'s mandate.

*Id.* at 233–34, 107 S.Ct. at 1102. *Martin* therefore clearly counsels that the jury in the present case should have heard the evidence of Couch's intoxication, even if it could not suffice to prove the affirmative defense of mental incapacity, because it related to the state's burden to prove premeditation.[4]

> knowledge of certain facts, then he should have a "defense" if he does not in fact have the necessary purpose or knowledge, no matter what the cause of his lack of purpose or knowledge may be, whether from mental disease, ignorance, mistake, or intoxication.
>
> This approach is not going to be of much assistance to drunks. * * * [M]urder can be committed without an intent to kill or to injure, for murder can sometimes be committed recklessly, and if not murder, the recklessness would be sufficient for *manslaughter.*
>
> Hunvald, *Criminal Law in Missouri—The Need for Revision*, 28 Mo.L.Rev. 521, 530–31 (1963) (emphasis added) (footnote omitted).
>
> Although the Missouri Supreme Court in *State v. Richardson* declined an invitation to overturn the longstanding rule, the court said that it reached its decision "particularly in view of the record in this case." 495 S.W.2d at 440. The defendant had asked a medical expert whether the defendant's intoxication made it impossible for him to premeditate the crime. The state's objection to the question was sustained, but the defendant made no offer to prove how the witness would have answered. The court therefore decided that the issue was not properly preserved for appeal. In the present case counsel could have made a proper record for appeal and provided the court the opportunity to pass on the questionable constitutionality of the Missouri rule.

**4.** The Supreme Court's decision in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), which allows states to place on the defendant the burden of proving mental incapacity, does not conflict with our analysis of *Martin.* *Leland* plainly suggests that juries should consider all the evidence when deciding the prosecution's case in chief, even the evidence going to the affirmative defense. The *Leland* court wrote:

> It is contended that the instructions may have confused the jury as to the distinction between the State's burden of proving premeditation and the other elements of the charge and appellant's burden of proving insanity. * * * Juries have for centuries made the basic decisions between guilt and innocence and between criminal responsibility and legal insanity upon the basis of the facts, *as revealed by all the evidence,* and the law, as explained by instructions * * *. We think that to condemn the operation of this system here would be to condemn the system generally.

*Leland*, 343 U.S. at 800, 72 S.Ct. at 1008 (emphasis added).

The Third Circuit wrote a very thorough and convincing opinion supporting the conclusion that the court may not bar admission of evidence of a defendant's mental state relevant to premeditation. *United States v. Pohlot*, 827 F.2d 889 (3d Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988). The court wrote:

> [T]he mere fact that a defendant has the right to introduce psychiatric evidence in support of the affirmative defense of insanity does not

Counsel's inexcusable failure to investigate the prosecution witnesses and realize the weakness of the alibi defense, therefore, prejudiced the defendant. While a jury would not likely believe that Couch was not at the scene when eight witnesses, including two eyewitnesses, placed him there, the jury might have been persuaded that Couch did not premeditate the unprovoked killing of a total stranger, especially considering Couch's drunken state. Moreover, to prove that counsel's performance was prejudicial, the Supreme Court does not require proof that the outcome would have been different but for counsel's deficiencies. Rather, only a reasonable probability of a different outcome is required. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. Here a reasonable probability exists that a challenge to Couch's premeditation, or to the law that would prevent the jury from hearing of his intoxication, would have led to a different outcome.

So there is no misunderstanding, my disagreement with the majority is *not* that counsel's performance was deficient because he failed to challenge the constitutionality of Missouri law. Rather, I consider counsel's performance totally derelict and deficient because he utterly failed to investigate prosecution witnesses and realize the absurdity and falsity of the defense he chose. That deficiency was prejudicial to the defendant because if counsel had recognized the gravity of his situation he could have explored other avenues and given a tenacious fight on the premeditation issue. It is reasonably probable he could have achieved a different result with this defense. Because counsel's decision to pursue an absurd alibi defense was not an informed choice, it cannot be considered strategic. *Cf. Eldridge*, 665 F.2d at 232–36 (counsel had duty to investigate; failure to do so was constitutionally ineffective assistance).

The wanton killing of the victim is not to be excused. Couch's intoxication and irrational behavior do not justify his criminal conduct. But the state recognizes different degrees of homicide, and it is just as unlawful as the crime itself to subject a defendant to a punishment not warranted by the undisputed facts of the crime. Our criminal law system operates unfairly if the state-furnished counsel makes little effort to investigate or defend the indigent accused. Public defenders in Missouri are burdened with a large caseload and little funds with which to operate. But the constitutional requirement of effective assistance of trial counsel afforded by the Sixth Amendment of the United States Constitution has little meaning if we justify in the name of "strategy" the conduct of counsel here.

justify barring the evidence from negating the government's case in chief. The Supreme Court has indicated that although a state may constitutionally shift the burden of proving insanity to the defendant, it did not sanction, and probably would not sanction, a jury

charge that prevented a jury from considering evidence of mental abnormality in determining whether the state had proven premeditation and deliberation beyond a reasonable doubt.

*Id.* at 901 (citation omitted).