UNITED STATES of America ex rel. Carrie Jean HERAL, Petitioner-Appellant,

v.

Gayle FRANZEN, et al., Respondents-Appellees.

No. 81–1009.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1981.

Decided Dec. 29, 1981.

---

Michael Mulder, Deputy State Appellate Defender, Chicago, Ill., for petitioner-appellant.

David Cassorla, Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Circuit Judge, and SPRECHER, Circuit Judge, and CAMPBELL,* Senior District Judge.

SPRECHER, Circuit Judge.

The petitioner, Carrie Jean Heral, raises two issues on appeal from the district court's denial of her petition for habeas corpus. First, Heral alleges that the failure of her counsel to notify the trial court that she had attempted suicide three days before she entered a guilty plea constituted ineffective assistance of counsel. Second, she maintains that a determination of her competence to enter a guilty plea required a specific ruling, separate from the determination that she was competent to stand trial. We reject both of these arguments and affirm the order of the district court.

## I

Carrie Jean Heral was arrested on August 2, 1972, for the murder of a fourteen-month-old infant. In a statement to police, Heral indicated that she had suffocated the child in his bed. One day after her arrest, the trial court granted a defense motion to appoint psychiatrists to examine Heral and determine whether she was competent to stand trial. Preliminary reports from these psychiatrists stated that, although Heral was considered a potential suicide, she was competent to stand trial.

On August 29, 1972, Heral was indicted for murder. A competency hearing was held before a jury on September 7, 1972. At this hearing a county jail matron testified to two suicide attempts by Heral during the month she had been confined. The

* Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

psychiatrists who had filed preliminary reports concerning Heral's competence also testified and reported that Heral had made numerous attempts in the past to take her own life. Nevertheless, the psychiatrists did not believe that these suicide attempts, or Heral's depressed state, made her incompetent to stand trial. The jury found Heral competent to stand trial.

Heral again attempted suicide on December 4, 1972. On December 7, pursuant to a plea bargaining agreement, she pleaded guilty to murder. Before accepting this plea the trial court considered additional reports from psychiatrists who had examined Heral subsequent to the competency hearing, but prior to her latest suicide attempt. These reports reaffirmed that Heral was competent to stand trial. The judge fully admonished Heral as to the effect of her guilty plea and made a thorough attempt to ascertain that Heral understood the nature and consequences of her waiver of the right to a jury trial. Neither the prosecution nor the defense counsel, however, advised the judge of Heral's latest suicide attempt. Furthermore, Heral appeared in court dressed in clothing which hid the sutures necessary to close her wounds. The judge accepted Heral's guilty plea and sentenced her to fourteen to twenty years imprisonment.[1]

The Appellate Court of Illinois affirmed Heral's conviction, *People v. Heral*, 25 Ill. App.3d 806, 323 N.E.2d 138 (1975), as did the Illinois Supreme Court, *People v. Heral*, 62 Ill.2d 329, 342 N.E.2d 34 (1976). Heral then filed a petition for post-conviction relief with the trial court based on the failure of either attorney to notify the trial judge of the suicide attempt. The hearing on the petition was held before the judge who had presided over Heral's competency hearing and accepted her guilty plea. The judge found that had evidence of Heral's suicide attempt been presented to him at the time the guilty plea was entered, he would not have been prompted to conduct a new com-

petency hearing. Thus, he dismissed the petition. This action was upheld in *People v. Heral*, 54 Ill.App.3d 527, 12 Ill.Dec. 215, 369 N.E.2d 922 (1977), and the Illinois Supreme Court denied Heral's petition for leave to appeal on March 30, 1978. Heral then filed the petition for writ of habeas corpus which is the subject of this appeal. The district court granted the state's motion for summary judgment and denied the petition.

## II

## A

Heral's first claim is that her attorney provided ineffective assistance of counsel by failing to notify the trial court, at the time Heral entered her guilty plea, that she had attempted suicide three days earlier. While we agree with the district court that the attorney's conduct was undesirable, we do not believe that in this case it constituted ineffective assistance of counsel.

The standard for determining ineffective assistance of counsel is whether counsel's performance "meets a minimum professional standard." *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). This, in turn, requires an examination of "the totality of circumstances in the particular case." *United States v. Phillips*, 640 F.2d 87, 92 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). Where an action can fairly be construed as a "trial tactic," this court will not find the action to constitute ineffective assistance simply because in hindsight it seems inadvisable. *United States ex rel. Rooney v. Housewright*, 568 F.2d 516, 520 (7th Cir. 1977); *United States ex rel. Robinson v. Pate*, 312 F.2d 161, 162 (7th Cir.), *cert. denied*, 373 U.S. 943, 83 S.Ct. 1553, 10 L.Ed.2d 698 (1963). The burden of proving ineffective assistance rests with the defendant. *United States v. Fleming*, 594 F.2d 598, 607 (7th

---

1. Fourteen years is the minimum authorized sentence for murder under the Illinois statute, Ill.Rev.Stat. ch. 38, § 1005–8–1.

Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979).

Heral argues that in this case the failure to notify the judge of her suicide attempt three days before her guilty plea "prevented an informed determination of her fitness to stand trial or plead guilty" in two ways. First, Heral claims that her suicide attempt was further evidence of her incompetency to stand trial, which would have caused the judge to reopen the competence issue. Second, Heral asserts that the suicide attempt resulted in changed circumstances which rendered the earlier competency determination invalid.

The claim that information concerning Heral's latest suicide was necessary to an "informed determination" of her competency finds scant support in the record. Although Heral characterizes her latest suicide attempt as crucial evidence of her incompetence to stand trial, the record indicates that Heral's suicidal tendencies had been thoroughly examined. The psychiatric reports on Heral indicated that she had attempted suicide many times in the past, including two attempts while awaiting trial for murder. Nevertheless, these reports had repeatedly stated that Heral was competent to stand trial, and a jury had so determined at a competency hearing. It is unlikely that evidence of yet another attempted suicide, in a long series of such attempts, would have convinced the judge of Heral's incompetence.

Heral also asserts that the earlier psychiatric reports had not addressed the competence of Heral to plead guilty under the "changed circumstances" of a suicide attempt, with its attendant physical consequences, within three days of the plea. While we recognize that "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial," *Drope v. Missouri*, 420 U.S. 162, 181, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975), Heral has cited no support for her

position that these specific circumstances made the previous evaluations of her competency invalid.[2] Absent such support, we defer to the trial court's finding at the post-conviction hearing that the psychiatric reports remained valid descriptions of Heral's competence.

■ Indeed, the trial judge explicitly ruled that information concerning the most recent suicide attempt would not have caused him to order a new examination for competency. The trial judge clearly did not believe that the withholding of information concerning the suicide attempt "prevented an informed determination" of Heral's competence. Furthermore, the Appellate Court of Illinois reviewed the record and concluded that it supported the trial court's determination that Heral had not demonstrated that the failure to disclose her suicide attempt had affected the outcome of the case. *People v. Heral*, 54 Ill.App.3d 527, 12 Ill. App. 215, 369 N.E.2d 922 (1977). Where we are asked by a habeas corpus petitioner to review a state court fact determination that was based on an examination of the same record as is before us, we are required to afford considerable deference to the state court determination. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). Heral has failed to prove by convincing evidence, as required by 28 U.S.C. § 2254(d) (1980), that the factual determination by the state court was clearly erroneous.

We conclude, therefore, that counsel's failure to notify the trial judge of Heral's most recent suicide attempt did not prevent an informed determination of her fitness to stand trial or plead guilty. The totality of circumstances in this case demonstrates that Heral's counsel rendered competent assistance. Faced with Heral's confession to the murder, counsel attempted to have her declared incompetent to stand trial. When this failed, he arranged a plea bargain whereby Heral could serve the statutory minimum for murder. His decision not to

2. Thus, while Heral alleges on appeal that she had suffered such blood loss as to affect her competence to plead guilty, she fails to direct us to any medical evidence which would substantiate her claim.

revive the competency issue and thereby endanger the plea bargain, when court psychiatrists had repeatedly found that Heral's suicidal tendencies did not render her incompetent, was a legitimate, albeit undesirable, tactical decision.

## B

Heral's second claim is that the trial court erred in accepting her guilty plea without making a separate and specific determination that she was competent to plead guilty. Although the trial judge had already adjudged Heral competent to stand trial, Heral argues that a more stringent standard must be applied in examining a defendant's competence to enter a guilty plea. We do not find this argument convincing.

Heral points to the Ninth Circuit's ruling in *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973), to support her assertion that a more stringent standard governs a determination of competence to plead guilty than that employed in assessing competence to stand trial. The court in *Sieling* relied heavily upon *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), where the Supreme Court noted a distinction between a defendant's competence to waive the right to counsel at trial and his competence to stand trial. The *Sieling* court read *Westbrook* to require a higher level of competence whenever constitutional rights are waived, and thus imposed a higher standard of competence to enter a guilty plea than to stand trial. 478 F.2d at 214–15.

We agree with the district court that *Sieling* represents "an overly broad interpretation" of *Westbrook*. *Westbrook* is a brief per curiam opinion which deals only with competence to waive the right to counsel at trial. An examination of the record failed to indicate to the *Westbrook* Court whether the hearing on the defendant's

competency to stand trial had addressed the question of his competency to waive the right to counsel. Thus, the decision emphasized the protective function of the trial court and clearly rested upon a concern for the powerlessness of an accused proceeding without counsel. Here, however, Heral was represented by counsel and was far from powerless—her attorney managed to obtain a minimal sentence for her crime. We decline to follow the *Sieling* court in reading into *Westbrook* a holding unsupported by any analysis in that opinion.

An examination of the practical effects of the *Sieling* analysis lends further support to our conclusion. As the district court noted, "the distinction between levels and types of competence would be very difficult to ascertain." *United States ex rel. Heral v. Franzen*, No. 79 C 20002, slip op. at 8 (N.D.Ill. Nov. 7, 1980). The opinion in *Sieling* illustrates this difficulty. There, the court rejected the standard for competence to stand trial, enunciated in *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960), of whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."[3] Instead, the *Sieling* court applied what it believed to be a more stringent test to determine competence to plead guilty. The court looked to whether " 'a mental illness has substantially impaired his [the defendant's] ability to make a reasoned choice among the alternatives presented to him and to understand the nature of the consequences of his plea.' " *Sieling v. Eyman*, 478 F.2d 211, 215 (9th Cir. 1973), quoting *Schoeller v. Dunbar*, 423 F.2d 1183, 1194 (9th Cir.) (Hufstedler, J., dissenting), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). How these two standards differ as a practical matter is far from clear.[4]

---

3. This was the standard which the trial court used to determine Heral's competence.

4. Indeed, the Ninth Circuit has limited the scope of *Sieling*. In *Makal v. Arizona*, 544 F.2d 1030 (9th Cir. 1976), *cert. denied*, 430 U.S. 936,

97 S.Ct. 1563, 51 L.Ed.2d 782 (1977), the court held that the lack of a specific finding by the trial court of the defendant's competence to plead guilty did not invalidate the plea. The court noted that the district court could properly reconstruct the competence of the defendant

Furthermore, as the First Circuit noted in *Allard v. Helgemoe*, 572 F.2d 1, 4 (1st Cir.), *cert. denied*, 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978), the result of *Sieling* would be to create a class of defendants adjudged competent to stand trial but incompetent to take advantage of the leniency in punishment accorded by plea bargaining agreements. Such a result, in the name of constitutional protection, would be anomalous to say the least.

We hold, therefore, that the degree of competence required to plead guilty is the same as that required to stand trial. This decision is in accord with at least six other circuits. *Allard v. Helgemoe*, 572 F.2d 1 (1st Cir. 1978); *United States ex rel. McGough v. Hewitt*, 528 F.2d 339 (3d Cir. 1975); *Malinauskas v. United States*, 505 F.2d 649 (5th Cir. 1974); *United States v. Harlan*, 480 F.2d 515 (6th Cir.), *cert. denied*, 414 U.S. 1006, 94 S.Ct. 364, 38 L.Ed.2d 242 (1973); *Wolf v. United States*, 430 F.2d 443 (10th Cir. 1970); *United States v. Valentino*, 283 F.2d 634 (2d Cir. 1960).

█ Thus, we find that Heral was not entitled to a separate determination of her competence to plead guilty. Having found Heral competent to stand trial, the district court was not required, absent changed circumstances, to make a further determination of competence before accepting her guilty plea.

### III

We, therefore, find that Heral was not denied effective assistance of counsel and that the trial court made the proper competency determination prior to accepting Heral's guilty plea. Accordingly, the district court's order granting the state's motion for summary judgment is AFFIRMED.

to plead guilty based upon evidence adduced in determining his competence to stand trial. *Id.* at 1035.