Willie B. BLACKMON, a/k/a Willie B.
Denson, Appellant,

v.

William ARMONTROUT, Appellee.

No. 88–1298.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 18, 1988.

Decided May 12, 1989.

Rehearing and Rehearing En Banc Denied
June 9, 1989.

Springfield Baldwin, St. Louis, Mo., for appellant.

Patrick King, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Willie Blackmon (a/k/a Willie Denson) appeals the District Court's [1] dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

Blackmon was convicted of two counts of assault and two counts of kidnapping by a jury in the Circuit Court of Scott County, Missouri. The Missouri Court of Appeals affirmed his conviction on direct appeal, *see State v. Blackmon*, 664 S.W.2d 644 (Mo.Ct. App.1984), and subsequently denied his motions for recall of mandate, rehearing, and transfer to the Supreme Court of Missouri.[2]

Blackmon filed the instant pro se habeas petition with the District Court, alleging first, that the state trial court had denied him his right to represent himself in violation of the Sixth Amendment, and second, that his counsel on direct appeal was ineffective in failing to urge the Missouri Court of Appeals to reverse his conviction on the ground that the trial court's failure to hold

---

1. The Honorable John F. Nangle, Chief United States District Judge for the Eastern District of Missouri.

2. The Missouri Supreme Court also later denied Blackmon's motion to transfer the case to that Court.

a hearing *sua sponte* to determine Blackmon's competency to stand trial was plain error. The District Court declined to appoint counsel or hold an evidentiary hearing, and denied relief. We appointed counsel for purposes of this appeal, and we now affirm the District Court's denial of habeas relief.

## I.

Blackmon argues that the District Court erred in concluding that the state trial court's refusal to allow him to represent himself at trial did not violate his rights under the Sixth Amendment. In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a criminal defendant has a federal constitutional right "to proceed without counsel when he voluntarily and intelligently elects to do so." *Id.* 422 U.S. at 807, 95 S.Ct. at 2527 (emphasis omitted). The Court noted, however, that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* at 835, 95 S.Ct. at 2541 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The tension between the defendant's sixth amendment right to counsel and to represent himself requires the trial court to ascertain that the defendant fully understands that the assertion of one of those rights necessarily precludes the exercise of the other. The court must make sure that the defendant who wishes to represent himself understands "the magnitude of the undertaking and the hazards inherent in self-representation." *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir.1987). The court further must be satisfied that the defendant is making a knowing and intelligent waiver of his right to counsel. *See, e.g, Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962).

In this case, the state trial judge conducted a lengthy dialogue with Blackmon about the inherent dangers of selfrepresentation and was apparently satisfied with Blackmon's responses to the court's questions. However, after reviewing psychiatric reports, the judge determined that Blackmon should not be allowed to represent himself. The following exchange then took place between the judge and Mr. Walter, Blackmon's trial counsel:

> THE COURT: I have been considering the medical reports that concern Mr. [Blackmon]. [The prosecutor] gave me both of those reports and they indicate that in the opinion of the psychiatrist Mr. [Blackmon] has a mental problem, even though I have not found that to be a fact and the State has not accepted that plea. That is going to be the defense, according—or at least that is what Mr. Walter told me is going to be the defense in this case. I believe that in view of that, I am going to reverse my ruling of allowing Mr. [Blackmon] to represent himself, and I am going to, and do hereby, reverse that ruling and will not allow Mr. [Blackmon] to represent himself in this case because of the medical reports.
>
> MR. WALTER: Judge, if you are saying that, then you are saying he is not competent to proceed.
>
> THE COURT: No. I am not saying he is not competent to proceed. I am merely saying that I don't think he is going to be in a position—and I do hereby set aside my finding that he is intelligent enough, under the circumstances, to handle this particular case, and, therefore, I am not going to allow him to proceed to represent himself. Therefore, that ruling is set aside, and Mr. Walter is here and shall again be his counsel. He shall be his sole counsel.

Respondent's Exh. A. at 89–90.

█ This Court has before it the two psychiatric reports to which the trial judge referred.[3] The first report, dated January

---

**3.** There is some question as to whether the District Court had these two psychiatric reports before it when it rendered its decision in this

case. On April 26, 1988, appellant filed with this Court a motion entitled "Motion that the Court determine whether or not two psychiatric

28, 1982, reflected a pretrial examination conducted by Anasseril E. Daniel, M.D., a psychiatrist and consultant to the maximum security unit at Fulton State Hospital. Dr. Daniel concluded that "the accused does have a mental disease within the meaning of Section 552.010" [4] and that "the accused does not have the capacity to understand the proceedings against him and may not be able to assist his counsel in his own defense." Dr. Daniel recommended that Blackmon remain in the hospital for treatment and noted that "[w]ith appropriate treatment, hopefully, the patient will respond and he would be competent to stand trial ... within a period of two to three months after the treatment begins." The second report was prepared by Henry R. Bratkowski, D.O. on March 24, 1982, following a psychiatric interview on March 11, 1982. Dr. Bratkowski found that although Blackmon had a mental disease within the meaning of § 552.010, he had the capacity to assist his attorney in preparation of his defense and he understood the proceedings. Dr. Bratkowski recommended that Blackmon "be returned to court for disposition of the charges pending against him."

■ We hold that in these circumstances the trial court's refusal to permit Blackmon to represent himself was proper and did not violate *Faretta*. The standard for determining whether a person is capable of making a knowing and intelligent waiver of the right to counsel is not coextensive with the test for determining competency to proceed to trial. *See Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966); *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 133 (2d Cir.1975),

*cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976) ("standard of competence for making the decision to represent oneself is vaguely higher than the standard for competence to stand trial."). Dr. Bratkowski's conclusion that Blackmon was capable of assisting counsel in preparing his defense did not compel a conclusion that Blackmon could intelligently waive his right to counsel and proceed unassisted. On the contrary, Dr. Bratkowski's report confirmed that Blackmon suffered from a mental disease requiring ongoing medication. Moreover, psychological testing conducted by Dr. Daniel placed Blackmon in the dull-normal range of intellectual ability for verbal skills and in the borderline range of functioning on a performance intelligence test. We believe these facts support the trial court's finding that Blackmon could not make a knowing and intelligent waiver of his right to counsel and that he therefore should not be allowed to represent himself at trial. Accordingly, we affirm the District Court's conclusion that habeas relief should not be granted on this ground.

## II.

■ Blackmon next contends that he was denied effective assistance of appellate counsel because the attorney who represented him before the Missouri Court of Appeals did not argue that his conviction should be overturned on the ground that the trial court's failure to hold a hearing *sua sponte* on his competence to stand trial was plain error. Because we conclude that Blackmon suffered no prejudice, we reject this ground as well.

reports were ever filed with the U.S. District Court, and that the record be ordered to be supplemented with said reports." The two reports were attached to appellant's motion. By order entered April 27, 1988, this Court directed that appellant's motion be taken with the case for consideration along with the merits of the case. Because there is no dispute as to the authenticity of those reports and because we have carefully reviewed them in our consideration of the merits of the case, there is no need for further action on appellant's motion.

**4.** Mo.Rev.Stat. § 552.010 (1986) provides that:

The terms "mental disease or defect" include congenital and traumatic mental conditions as well as disease. They do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, whether or not such abnormality may be included under mental illnes, mental disease or defect in some classifications of mental abnormality or disorder. The terms "mental disease or defect" do not include alcoholism without psychosis or drug abuse without psychosis or an abnormality manifested only by criminal sexual psychopathy....

We find it necessary first to trace the strange procedural odyssey of Blackmon's claim that the trial court should have conducted a hearing to determine his competence to stand trial. On direct appeal, Blackmon argued that the trial court erred in failing to hold such a hearing, citing *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), which requires that trial courts hold hearings *sua sponte* whenever sufficient doubt exists as to a defendant's present sanity. The Missouri Court of Appeals rejected Blackmon's argument on the ground that because he had not objected at trial or raised the issue in his motion for new trial, it was not preserved for review. *See* 664 S.W.2d at 648. The Court apparently did not review the issue to determine whether the trial court should have acted *sua sponte*, as required by *Pate*. Blackmon subsequently filed a motion to recall the mandate, contending that counsel was ineffective in failing to argue for plain error review.[5] The Missouri Court of Appeals summarily denied that motion.

When the issue resurfaced in Blackmon's federal petition for habeas corpus, the state argued that the claim was procedurally barred due to the disposition of the issue by the Missouri Court of Appeals. The state took that stance despite the Supreme Court's holding in *Pate* that the failure of a state trial court to make inquiry as to the mental fitness of a defendant when sufficient doubt exists is constitutional error regardless of whether defendant himself raised the issue at trial. Nevertheless, to avoid dismissal of his federal petition under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), Blackmon voluntarily dismissed the claim on the merits.[6] Thus, the claim now only remains alive cloaked in Blackmon's ineffective assistance of appellate counsel argument. Because our analysis of the ineffective assistance claim requires that we now reach the merits of the *Pate* issue, we need not consider the problems posed under the procedural bar doctrine by the state courts' avoidance of the merits of this issue.[7] *Cf. Silverstein v. Henderson*, 706 F.2d 361, 366 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) ("New York courts could not constitutionally apply a procedural default rule to a possibly incompetent defendant.").

5. It seems to us that Blackmon's counsel did make something akin to a plain error argument to the Missouri Court of Appeals. In Blackmon's appellate brief, which is before us as Respondent's Exhibit C, counsel contended that "[t]he trial court erred in proceeding with trial when appellant was incompetent to proceed." As noted in the text, however, the Missouri Court of Appeals ignored the constitutional issue raised and summarily dismissed the point as not preserved for review.

6. In his pro se traverse to respondent's response to the order to show cause, Blackmon correctly noted that he did raise his *Pate* claim before the Missouri Court of Appeals, but that that court had neglected to review the claim. He stated, however, that "whatever claim raised in petitioner's petition that this court deems is an unexhausted of State remedies claim [sic], petitioner is willing to dismiss such claim and to proceed with the exhausted claims in this court." Disregarding both Blackmon's exhaustion argument and his willingness to delete any unexhausted claim, the United States Magistrate to whom the case was assigned recommended that his petition be dismissed in its entirety under *Rose v. Lundy*. Blackmon then filed objections to the magistrate's report and recommendation, again expressing his willingness to dismiss claims the court found to be unexhausted. The District Court granted Blackmon's "motion" to delete his *Pate* claim without further discussion of his argument that that claim had indeed been exhausted. Ironically, the magistrate later used Blackmon's decision to delete the *Pate* claim to support the notion that the claim was somehow weak and therefore counsel's failure to urge it on appeal would be understandable.

7. Respondent's assertion in its response to the District Court's order to show cause that Blackmon's constitutional claim was not presented on direct appeal is plainly wrong. In fact, Blackmon's state appellate brief cited both *Pate* and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and argued that "Appellant was prejudiced by this failure to hold a competency hearing in violation of his due process right to a fair trial." Respondent's Exh. C at 35. The Missouri Court of Appeals was presented with a full and fair opportunity to consider the merits of the constitutional issue posed by the trial court's failure to hold a competency hearing. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (petitioner must have fairly presented the substance of his federal claim to state courts).

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), teaches that in order to obtain habeas relief on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance was deficient and that prejudice resulted from that deficiency. *Id.* at 687, 104 S.Ct. at 2064. Thus, to prevail here, Blackmon must demonstrate that he would have prevailed on his claim that the trial court erred in proceeding to trial without a competency hearing. Having carefully reviewed the record, however, we conclude that the trial court's action did not violate *Pate.*

*Pate* held that when a sufficient doubt exists as to a defendant's competence to stand trial, his federal constitutional right to a fair trial places a duty upon a trial judge to inquire *sua sponte* into the issue. In a later case, *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the Supreme Court approved Missouri's statutory scheme for determining a defendant's competence to stand trial. Section 552.020 authorizes a trial judge to order psychiatric examination and requires him to hold a competency hearing when the report of that examination is contested. That section also provides that the judge may hold a competency hearing on his own motion. Mo.Rev.Stat. § 552.020 (1986).

In the case before us, although the first psychiatric report indicated that Blackmon suffered from a mental disorder that rendered him presently incompetent to stand trial, it further noted that with appropriate treatment that condition would abate within two to three months. The second report, filed more than two months later, indicated that in fact Blackmon's condition had improved and that he was competent to stand trial. Blackmon did not contest that finding; quite to the contrary, he used the report to bolster his argument that he should be allowed to represent himself. *See* Part I *supra.* It was only after the trial judge decided not to allow him to represent himself that Blackmon sought to use the second report as a shield, rather than as a sword, to avoid proceeding to trial with his appointed counsel. Given these facts, and because there were no other circumstances to create a doubt on the part of the trial court as to Blackmon's competency to stand trial, we conclude that the actions of that court were in accordance with both *Pate* and *Drope* and did not offend Blackmon's constitutional right to a fair trial.

Accordingly, we must further conclude that Blackmon suffered no prejudice from the failure of the Missouri Court of Appeals to consider the *Pate* issue, irrespective of whether that failure resulted from any deficiency of appellate counsel. We therefore hold that Blackmon is not entitled to relief on his ineffective assistance claim.

The judgment of the District Court is AFFIRMED.