**UNITED STATES of America, Plaintiff--Appellee,**

v.

**Willie Earl CLARK, Defendant--Appellant.**

**No. 90–2190.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1991.

Decided Sept. 19, 1991.

John F. Hartmann (argued), Barry R. Elden, Asst. U.S. Attys., Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Martin S. Agran, Agran & Agran, Frederick F. Cohn (argued), Keith Spielfogel, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., and CUDAHY and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

A jury found that defendant-appellant Willie Earl Clark, having been convicted of a felony under Illinois law, knowingly possessed a firearm on July 27, 1987, in violation of 18 U.S.C. § 922(g)(1). Clark, who waived his right to counsel and presented his defense pro se, now argues that he lacked the mental capacity to represent himself and that his conviction should be reversed. Clark also presents other arguments for reversal of his conviction. He claims that his arrest was without probable cause and therefore in violation of his fourth amendment rights. In addition, he challenges the following: the district court's instruction to the jury on the nature of the offense; the district court's denial of Clark's motion to suppress; the district court's denial of Clark's motion for a bench trial; and the sufficiency of the evidence. For the reasons that follow, we affirm the conviction.

## FACTS

The morning of July 27, 1987, defendant Willie Earl Clark, Brenda Smith, and two men were gathered in front of a vacant lot on South California Avenue in Chicago. Chicago Police Sergeant Edward Kopsky heard a gunshot while patrolling a nearby area. He turned his patrol car toward the direction of the gunshot. As he approached the area, he saw Clark standing in front of the vacant lot. He noticed that Clark had an object in his right hand. He also saw Smith standing a few feet away from Clark and two men walking away from Clark.

Kopsky drove closer to Clark, and then observed Clark throw the object he was holding into the vacant lot. Kopsky stopped his car in front of Clark and exited the car. He smelled what he thought to be gunpowder. Kopsky asked Clark, "What was that?", and Clark told him it was a firecracker. Smith, who was intoxicated, disagreed with Clark and told Kopsky that it was a gun, that Clark had shot into the ground and then thrown the gun into the lot. Kopsky then checked Clark for weapons, handcuffed him, placed him in the back seat of the police car, and radioed for assistance.

Shortly thereafter Officers Eugene Vann and Nick Goggin arrived to assist Kopsky. Goggin searched the area for the gun and, after climbing a fence at the rear of the vacant lot, found a nine-millimeter German Luger pistol. When Brenda Smith saw what Goggin had discovered, she said, "That is the gun." Sergeant Chris Zaglifa, also at the scene in response to the request for assistance, unloaded the pistol. He removed seven live nine-millimeter rounds from the gun.

Vann moved Clark from Kopsky's car to the car in which he and Goggin had arrived. Vann searched the back seat of Kopsky's car, where Clark had been sitting, and discovered a live nine-millimeter round that matched those already removed from the German Luger. Vann and Goggin then drove Clark to the police station.

According to Vann's testimony, Vann read Clark his *Miranda* rights on the way to the station, upon arriving at the station, and after completing the case report. (During the course of the trial, Clark moved to suppress Vann's testimony regarding the *Miranda* warnings and Clark's

statements, but the district court determined, outside of the presence of the jury, that Vann's testimony was credible.) After Clark stated that he understood his rights, Vann questioned him. Vann asked Clark what he had been doing on the morning of the incident. Clark replied that he had been "burned" by a drug dealer and that he was attempting to get his money back. Vann asked Clark whether he tried to harm the dealer, and Clark answered that he only wished to scare him.[1]

## PROCEDURAL BACKGROUND

On June 14, 1988, a grand jury indictment charged that on July 27, 1987, Clark, having been convicted of a felony under Illinois law, knowingly possessed a firearm that had traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). In a pretrial proceeding September 15, 1988, Clark informed the district court that he wished to have his court-appointed attorney, Martin Agran, dismissed and that he would rather represent himself than have Agran represent him. He mentioned an attorney that he would like to have represent him, Jeffrey Harris, and the court granted him a one-day continuance to secure his desired counsel. The next day Clark appeared with Agran, not Harris. He told the court that he would have no one represent him other than Harris and that he would represent himself if Harris could not serve as his counsel.

The district court strongly advised Clark against pro se representation both on September 15th when Clark first mentioned the possibility, ("I do not have words in my vocabulary to explain to you how foolhardy I believe it is for someone under indictment who does not have legal training to represent himself in a case—in a criminal case." Transcript of September 15, 1988 at 4); and again on September 16th when Clark reiterated that he wished to represent himself ("I have to advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself.... I would strongly urge you not to try to represent yourself." Transcript of September 16, 1988 at 8–9). Despite these warnings, Clark persisted and the district court conducted the necessary questioning in order to determine whether Clark's decision to waive counsel was knowing and intelligent.[2] The district court determined that Clark's waiver was knowing and intelligent and that Clark could proceed pro se. The court directed Agran to act as stand-by counsel.

---

1. During the trial, Clark challenged Vann's testimony regarding the *Miranda* warnings and does so again in this appeal. Clark testified that Vann never read him his *Miranda* warnings. Stand-by counsel Keith Spielfogel represented Clark on this issue and moved to suppress Vann's testimony regarding Clark's statement of his purpose for his actions the early morning that he was arrested.

After considering the arguments and testimony pertaining to the motion to suppress, the district court determined that Vann's testimony was credible regarding the reading of and waiver of Clark's *Miranda* rights. The court denied the motion to suppress based on its credibility determination, and also because the motion was untimely according to the timetable established in the pretrial order, of which the parties had been aware for over a year and a half at the time of the motion.

2. The Court: Let me explain to you, Mr. Clark, that someone who is accused such as yourself has a constitutional right to represent himself, if he chooses to do so. However, your waiver, which means your giving up of counsel, must be knowing and voluntary.

This means that you have to be fully aware of the hazards that you face and the disadvantages of self-representation.... Have you ever studied law?

The Defendant. No, ma'am.

The Court: Have you ever represented yourself or any other defendant in a criminal action?

The Defendant: I represented myself in '74 and I got ten years on it.

The Court: You represented yourself in '74?

The Defendant: Yes, ma'am, at 26th and California.

Transcript of September 16, 1988 at 6.

The court continued by asking Clark whether he was familiar with the crime with which he was charged, the maximum sentence possible, the court's inability to assist him during the trial, the Federal Rules of Evidence and the Federal Rules of Criminal Procedure; and how he would have to question himself in order to present his testimony. *Id.* at 6–8. The district court advised him not to represent himself, and then asked whether Clark still wished to represent himself. *Id.* at 9. Clark stated that he did and that his decision was entirely voluntary. *Id.*

Jury selection commenced on September 28, 1988. On September 29, 1988, the district court determined that there was reason to question Clark's competency to stand trial. The court dismissed the jurors. The court then ordered an inquiry into Clark's mental capacity, a psychiatric evaluation, and a competency hearing.

On January 16, 1989, Dr. Toni Camp of the Isaac Ray Center, Inc., Chicago, filed in the district court her psychiatric evaluation of Clark. Having interviewed Clark and reviewed his records, she concluded that he had a psychiatric diagnosis of bipolar affective disorder, manic-mild (manic depressive illness) and, because of that, he was not competent to stand trial at that time. The competency hearing was held on March 22, 1989, and on March 24, 1989, the district court found that Clark was not competent to stand trial. The court ordered that Clark be hospitalized for treatment and later evaluated on his competency to stand trial.

The director of the United States Medical Center for Federal Prisoners in Springfield, Missouri ("Center"), certified in a letter of July 18, 1989, that Clark was competent to stand trial. The clinical psychologist who evaluated Clark at the Center, Dr. David Mrad, made observations similar to those of Camp, but did not concur with her diagnosis. He found, instead, that Clark's behavior was indicative of a significant personality disorder. At the second competency trial on August 29, 1989, Clark was represented by counsel, Keith Spielfogel.[3] Neither Clark nor his attorney contested his competency.

At the competency hearing, Clark again informed the district court that he wished to represent himself. Transcript of August 29, 1988 at 29. As had been done in the September 16, 1988, pretrial hearing when Clark asserted that he wished to proceed pro se, the district court conducted an inquiry to ensure that Clark was knowingly and intelligently waiving his right to counsel. Id. at 32–36. The court inquired as to whether Clark had ever studied law, which he had not, although he said that he had

read "a few of the books" when he was in the institution. Id. at 32. Clark reminded the court that he had answered similar questions the previous year, and the district court explained that it was the court's responsibility to conduct another complete inquiry regarding waiver of his right to counsel. The district court asked Clark about his familiarity with the crime with which he was charged, his knowledge of the Federal Rules of Evidence and Federal Rules of Criminal Procedure, and the manner in which he would be required to present his testimony. Clark acknowledged his awareness and comprehension of what would be required of him. After yet another warning from the district court that Clark not represent himself, Clark stated that he wished to be his "own attorney in this matter," and that he made the decision voluntarily. Id. at 36. In an order issued August 29, 1989, the district court found that Clark was competent to stand trial and that he had knowingly and intelligently waived his right to counsel.

Clark's trial commenced on November 16, 1989. Clark presented his own defense, with Spielfogel as stand-by counsel. On November 28, 1989, the jury found Clark guilty. Following a March 13, 1990, sentencing hearing, on May 21, 1990, the district court sentenced Clark to twenty-five years' incarceration.

## ANALYSIS

In this appeal, Clark argues that the district court erred in allowing him to waive his right to counsel because, Clark contends, he lacked the competency to proceed pro se. We now address Clark's competency argument and the other issues he raises.

### Clark's Competency to Proceed Pro Se

█ Clark contends that he was denied due process and his sixth amendment right to counsel when the district court allowed him to appear pro se, because he was mentally ill and therefore not competent to represent himself. The government counters that so long as the district court found

---

3. On August 8, 1989, the district court appointed Spielfogel to replace Agran as Clark's attorney.

Clark competent to stand trial *and* that he knowingly and intelligently waived his right to counsel, the district court was not required to make a special finding that Clark was "sufficiently competent" to represent himself.

■ In considering a defendant's waiver of his or her right to counsel, this court must "determine from the record whether the accused understood the risks associated with proceeding *pro se* at trial when he elected to represent himself." *United States v. Bell*, 901 F.2d 574, 576 (7th Cir. 1990) (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)). As *Faretta* explains, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." 422 U.S. at 835, 95 S.Ct. at 2541.

■ It is appropriate for the district court to conduct a formal inquiry to inform the defendant of the risks of proceeding pro se and to advise against self-representation. *Bell*, 901 F.2d at 576–77. According to *Bell*, "[t]hough this court has rejected the rigidity implicit in a formal inquiry, a district court must make a sufficient inquiry to satisfy itself that the defendant in fact understands the dangers involved in self-representation, particularly where there is a question regarding the defendant's competency," as there was in *Bell* and is in this case. *Id.* at 577. We will not reverse the district court "where the record as a whole demonstrates that the defendant knowingly and intentionally waived his right to counsel." *Id.* (citing *United States v. Mitchell*, 788 F.2d 1232, 1235–36 (7th Cir.1986)).

Clark cites *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), in support of his proposition that he was not competent to represent himself. *Westbrook* established that a hearing on competence to stand trial, without a hearing or inquiry into the competence of the defendant to waive the right to counsel, is not sufficient for a trial court to allow waiver of the right to counsel. The Court focused on the "protecting duty" of the trial court in assuring " 'an intelligent and competent waiver by the accused.' " *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

We analyzed *Westbrook* in *United States ex rel. Heral v. Franzen*, 667 F.2d 633, 637 (7th Cir.1981). Heral was found competent to stand trial, like Clark, yet claimed the trial court erred in accepting her guilty plea without making a separate and specific determination that she was competent to plead guilty. She argued for a more stringent competency standard for guilty pleas. Heral based this argument on *Sieling v. Eyman*, 478 F.2d 211 (9th Cir.1973), in which the Ninth Circuit interpreted *Westbrook* to require a higher level of competency when constitutional rights are waived. We disagreed with that "overly broad" *Westbrook*-analysis, stating,

> *Westbrook* is a brief per curiam opinion which deals only with competence to waive the right to counsel at trial. An examination of the record failed to indicate to the *Westbrook* Court whether the hearing on the defendant's competency to stand trial had addressed the question of his competency to waive the right to counsel. Thus, the decision emphasized the protective function of the trial court and clearly rested upon a concern for the powerlessness of an accused proceeding without counsel.

*Heral*, 667 F.2d at 637. We noted, also, and we recognize again in Clark's case, that " 'the distinction between levels and types of competence would be very difficult to ascertain.' " *Id.* (quoting *United States ex rel. Heral v. Franzen*, No. 79 C 20002, slip op. at 8 (N.D.Ill. Nov. 7, 1980)).

With respect to the district court's inquiry into the knowing and intelligent waiver, "we have strongly suggested that a trial court, at a minimum, inquire of the defendant's age and level of education, and inform him of the crimes with which he was charged, the nature of those charges, and the possible sentences they carry." *United States v. Belanger*, 936 F.2d 916, 918 (7th Cir.1991). The defendant should

also be "made aware of the 'difficulties he would encounter in acting as his own counsel.'" *Id.* at 919 (quoting *United States v. Moya–Gomez,* 860 F.2d 706, 732 (7th Cir. 1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989)). The district court in Clark's case conducted two extensive inquiries of Clark when he asserted that he wished to proceed pro se.

We emphasize that our consideration of the propriety of the district court's decision to allow Clark to proceed pro se, with Clark's competency challenge in mind, focuses on the question established in *Faretta*—whether defendant waived the right to counsel knowingly and voluntarily. In *United States v. McDowell,* 814 F.2d 245, 250 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), the defendant alleged that the district court erred by failing to determine whether he was competent to conduct his own defense. The Sixth Circuit recognized that " 'vaguely higher' " competence is required to waive counsel than to stand trial, but did not find that "the question of competency is determined separately from the question whether the assertion of the right of self-representation was knowing and intelligent." *Id.* at 250. The *McDowell* court recognized "only in passing that a psychological impairment would go to the question of whether the waiver of counsel was knowing and intelligent. Any limitations ... that do not affect the ability of the accused to choose self-representation over counsel can probably be overcome, if necessary, through the use of stand-by counsel...." *Id.* at 250 n. 2.

In *United States v. Moya–Gomez,* 860 F.2d at 741, the defendant, who waived right to counsel, argued that the district court should have intervened once it became apparent that he was incompetent to defend himself. We noted that the Sixth Circuit had addressed a similar claim in *McDowell,* where the defendant alleged that the district court committed error in failing to declare a mistrial once it became apparent that the defendant's incompeten-

cy was preventing his receipt of a "fair trial." *Moya–Gomez,* 860 F.2d at 741; *McDowell,* 814 F.2d at 251. The *McDowell* court concluded that "[t]he only thing that was 'unfair' about McDowell's trial was that he did not represent himself very well and he refused to make use of the stand-by counsel appointed by the court." 814 F.2d at 251. In Clark's case, the district court carefully considered whether Clark's waiver of the right to counsel was knowing and intelligent. Likewise, the district court made certain that Clark's appointed attorney, Spielfogel, would act as stand-by counsel.[4] Thus we find, as we maintained in *Moya–Gomez,* that "[w]e agree with the Sixth Circuit's reasoning on this point [*McDowell* ] and see no error in the way the district court handled the matter once [defendant] elected to represent himself." 860 F.2d at 741.

█ Clark asserts that his mental problems made him fragile—unable to handle the pressure of the trial. He cites examples of mood swings, tantrums and physical pain to support this assertion. He also claims that his mental incompetency caused him to make poor decisions regarding admission of evidence and other aspects of the defense he presented. Our review of the record indicates that Clark had extensive knowledge of the facts of his case. His cross-examinations of government witnesses were very detailed. The district court stated on the second day of trial, "I certainly pray that the record is very, very, very clear that Mr. Clark is making very careful, strategic decisions here, that he is more aware of what is going on here than I would say 99 percent of the lawyers that appear before me, because I have never seen anyone who knew his case the way Mr. Clark knows his case." Trial Transcript at 320. Clark had represented himself in a prior criminal case. He had a strong knowledge of the facts of his case, his cross-examinations were extensive, and he utilized the assistance of his stand-by counsel when legal issues that went beyond his realm of knowledge arose.

---

**4.** In deciding to allow Clark to proceed pro se, the district court stated, "But I can tell you this, no matter what I am certainly going to ... I am

going to have standby counsel in this trial." Transcript of August 29, 1989 at 36.

After one of the most intense outbursts by Clark—following his cross-examination of Sergeant Zaglifa—the district court stated,

> Not only, you know, not only is he competent, he is—he is fully cognizable of everything that has gone on previous to this. For whatever reasons he is very upset with the Court for having sent him for the competency hearings. Of course, we all know the history of this case. The Isaac Ray Center found Mr. Clark incompetent. He was then sent to Springfield where he was found, after treatment, to be competent to stand trial. There is no question that he is competent to stand trial.

Trial Transcript at 559–60.[5]

It is not to be expected that a pro se trial will be free of problems. As *McDowell* discusses,

> [t]he *Faretta* court assumed that the overwhelming majority of laymen who defend themselves in a criminal action will fare worse than those represented by skilled counsel. Nonetheless, just as it is the accused's right to plead guilty or *nolo contendere* to the charges against him, it is equally an accused's personal constitutional right to face the charges alone, either by standing mute and forcing the state to its proofs or by attempting to defend himself. The *only* condition on this right is that it be asserted by the accused with his "eyes open."

814 F.2d at 250 (citing *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540).

Clark asserted early in the 1988 proceedings, as well as the 1989 proceedings, that he wished to represent himself. He strongly believed that only he could present his best defense. Whether this was a wise decision is not for us to determine, for even a trained attorney who represents himself has a fool for a client. We find, however, that the district court correctly determined that Clark was competent to stand trial and

that Clark knowingly and intelligently waived his right to counsel. No additional competency determination need be made.

*Jury Instruction*

■ Clark asserts that the district court's jury instruction which defined what the government had to prove in order for Clark to be convicted, denied Clark due process because it permitted him to be convicted of an offense for which he was not indicted. The grand jury indictment charged Clark with possession of a firearm that had traveled "in interstate commerce." The district court's instruction to the jury, using language from 18 U.S.C. § 922(g)(1), described the offense as possession of a firearm that had traveled "in interstate or foreign commerce." Clark asserts that where the jury is permitted to convict a defendant upon a theory different from that charged in the indictment, the conviction must be reversed.

The government contends that because defendant did not object to the instruction, after having discussed the instructions with stand-by counsel, Clark waived this objection. The district court presented each instruction to the parties and for each instruction asked if there were any objections. Clark and Spielfogel had the opportunity to object, but neither did. Trial Transcript at 868–72.

As this court has noted frequently, "[i]t is well settled that '[t]o preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection.'" *United States v. White*, 903 F.2d 457, 466 (7th Cir.1990) (citing *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988)). Failure to make a proper objection results in waiver of the issue, and "the court's ruling may only be reversed if a 'plain error' was committed." *Id.;* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial

---

**5.** Clark presents a brief argument that not only was he not competent to represent himself, but that "his acts at trial raised a reasonable doubt of whether he was competent even to stand trial." Appellant's Brief at 29 n. 3. "A trial court's finding of competency to stand trial will not be set aside on review unless it is clearly

erroneous." *United States v. Bennett*, 908 F.2d 189, 195 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). The district court's finding that Clark was competent to stand trial is supported by the evidence and is not clearly erroneous.

rights may be noticed although they were not brought to the attention of the court."). *See United States v. Young*, 470 U.S. 1, 15 n. 12, 105 S.Ct. 1038, 1046 n. 12, 84 L.Ed.2d 1 (1985). To constitute plain error, "an error must be conspicuous." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). Reversal of a conviction on a ground that the defendant failed to raise in the district court is "justifiable only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted." *Id.*

Clark objects to the variance in the indictment as originally issued and as presented in the instructions to the jury. We note that "[i]n general, either an amendment or a variance [to an indictment] will be allowed to stand if it does not change an 'essential' or 'material' element of the charge so as to cause prejudice to the defendant." *United States v. Cina*, 699 F.2d 853, 857 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). As defined in *Cina*, "[a]n 'essential' or 'material' element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *Id.* at 859.

We do not find any plain error in the addition of "foreign commerce" to the offense presented to the jury. Clark acknowledges that the inclusion of "interstate" *and* "foreign commerce" is a correct statement of the law, but claims that the addition of "foreign commerce" in the instruction to the jury permitted Clark to be convicted of an offense for which he was not charged. The government's main objective at trial was to prove that Clark possessed the firearm, and Clark made a substantial effort to disprove possession of the gun. The parties did not devote energy to proving or disproving whether the German Luger had travelled in interstate commerce. Even going beyond the focus of the parties in this case, we note that the evidence that the Luger was manufactured in Germany and ended up in the inland state of Illinois indicates that the firearm travelled in interstate commerce and thus the government received no unfair advantage by the inclusion of "foreign commerce" in the jury instruction. *See United States v. Farmer*, 924 F.2d 647, 651 (7th Cir.1991). Therefore, because the variance in the instruction does not rise to the level of creating the situation of "but for the error" Clark would not have been convicted, we will not reverse Clark's conviction on this ground.

*Admissibility of Incriminating Statement*

■ Clark argues that the district court erred in admitting an incriminating statement made by Clark to Officer Vann. Clark claims that he had not been read his *Miranda* rights when he told Vann that he had been on South California Avenue that early morning of July 27th because he was trying to scare a drug dealer who had cheated him. Because Clark believes that this statement was prejudicial and improperly elicited, he maintains that it should not have been admitted.

The district court found that Clark knowingly and intelligently waived his *Miranda* rights. " 'Whether a defendant waived his or her *Miranda* rights is a fact question subject to the clearly erroneous standard.' " *United States v. D'Antoni*, 856 F.2d 975, 980 (7th Cir.1988) (citing *United States v. Hawkins*, 823 F.2d 1020, 1022 (7th Cir.1987)). Vann testified that he read Clark his *Miranda* rights three times. The district court found this testimony to be credible. Our review of the record indicates that Clark did not present any convincing proof that he was not properly informed of his *Miranda* rights; so, we do not find the district court's decision to be clearly erroneous.[6]

---

**6.** We note that the district court denied Clark's motion to suppress this statement also on the ground that it was untimely. Clark does not challenge the district court's timeliness decision.

Clark's failure to challenge the district court's alternative ground for denying the motion to suppress simply bolsters our reason for affirming the district court on this issue.

*Right to a Bench Trial*

■ Clark moved to be tried in a bench trial, rather than in trial by jury. The government did not consent to Clark's request to waive his right to trial by jury. Clark now argues that being deprived of the requested bench trial denied him his constitutional rights. We find, however, that the district court did not err in denying Clark's motion for a bench trial since "there is no federally recognized right to a criminal trial before a judge sitting alone...." *Singer v. United States,* 380 U.S. 24, 34, 85 S.Ct. 783, 789, 13 L.Ed.2d 630 (1965). "A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury." *Id.* at 36, 85 S.Ct. at 790. We must point out that "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Id.* at 34–35, 85 S.Ct. at 790–791.

The *Singer* Court found that there is "no constitutional impediment to conditioning a waiver of this right [to jury trial] on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him." *Id.* at 36, 85 S.Ct. at 790. Clark contends, however, that *Singer* held that a "defendant could insist on a bench trial, where the reasons to permit a bench trial are so compelling that 'the government's insistence on trial by jury would result in the denial to a defendant of an impartial trial.'" Appellant's Brief at 34 (quoting *Singer,* 380 U.S. at 37, 85 S.Ct. at 791). Unfortunately, Clark has taken this *Singer* quote out of context in presenting this argument. *Singer* actually states, *"[w]e need not determine in this case* whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on a trial by jury would result in the denial to a defendant of an impartial trial." *Id.* (emphasis added). The only case law Clark cites to support his claim that such a situation might arise, are two district court cases involving very complex facts and issues. *United States v. Braunstein,* 474

F.Supp. 1 (D.N.J.1979); *United States v. Panteleakis,* 422 F.Supp. 247 (D.R.I.1976) (both cases involved multiple defendants and multiple medicaid, medicare and tax fraud issues that the courts considered so complex that they would be better handled in a bench trial than jury trial). Clark's case did not present such a situation. Clark was not denied any constitutional rights by receiving a trial by jury rather than the requested bench trial.

*Fourth Amendment—Probable Cause to Arrest*

■ Clark argues that he was seized in violation of his fourth amendment rights because the arresting officer did not have probable cause to arrest him and that, therefore, all evidence flowing from his arrest must be suppressed. Clark bases this assertion on his belief that the officer made the decision to arrest Clark because of the statements of the inebriated and therefore unreliable Brenda Smith. As with the jury instruction argument, Clark has waived this argument since he did not raise it in the district court through any argument or a motion to suppress evidence flowing from the arrest.

In *United States v. Towns,* 913 F.2d 434, 438 n. 1 (7th Cir.1990), the defendant raised for the first time on appeal that the police officer lacked the reasonable suspicion of criminal activity that would justify the officer's stopping the defendant and asking his name. We held that "because the defendant did not raise this argument below ... and the trial judge therefore had no opportunity to consider this claim, the issue is deemed waived on appeal." This determination was based on defense counsel's failure to present any "'exceptional circumstances where justice demands more flexibility,' which would justify an exception to the general rule." *Id.* (citing *International Travelers Cheque Co. v. Bankamerica Corp.,* 660 F.2d 215, 225 (7th Cir.1981)).

As in *Towns,* Clark has not presented any "exceptional circumstances" to justify an exception to the waiver rule. Kopsky had probable cause to arrest Clark. He heard a gunshot and proceeded in the direction from which it came. He saw Clark standing in front of the vacant lot, holding an object in his hand. As Kopsky ap-

proached Clark, Clark tossed the object into a vacant lot. When Kopsky got out of his car, he smelled gunpowder. Clark told Kopsky the sound came from a firecracker, but Smith, who was intoxicated but able to communicate, countered that it was a gunshot. All of these circumstances contributed to Kopsky's decision to arrest Clark. Clark has presented nothing to refute this and has not presented the necessary "exceptional circumstances." Thus, the issue is deemed waived.

*Sufficiency of the Evidence*

■ Clark's final attempt to have his conviction reversed is the frequently encountered argument that the evidence was insufficient to support Clark's conviction. *United States v. Bennett*, 908 F.2d 189, 196 (7th Cir.1990), is one of the many cases that explains, a defendant

> "bears a heavy burden in seeking to have his convictions overturned on sufficiency grounds. We must examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences, and can reverse only if we find that a reasonable fact-finder could not have found the essential elements of the offense beyond a reasonable doubt."

Along with the above-described circumstances which created probable cause for Kopsky to arrest Clark, there was additional evidence presented at trial which was sufficient for the jury to convict Clark for violation of 18 U.S.C. § 922(g)(1) as a convicted felon in knowing possession of a firearm. A search of the area near where Clark had been standing resulted in the discovery of a German Luger pistol. When Smith saw the gun she stated that it was the one Clark used. A search of the back seat of Kopsky's car, where Clark had been placed until additional police officers arrived to assist Kopsky, revealed a bullet that matched those removed from the German Luger.

Clark contends that the testimony of Kopsky and Vann, and the out-of-court statements by Smith are the sole reasons for his conviction, and that this evidence was unreliable. It is not for this court to weigh the evidence or evaluate the credibility of witnesses—especially credibility, because " 'we defer to the jury's determination of witnesses' credibility.' " *United States v. Balzano*, 916 F.2d 1273, 1285 (7th Cir.1990) (quoting *United States v. Vega*, 860 F.2d 779, 794 (7th Cir.1988)). The jury in this case determined the witnesses' credibility, weighed the evidence, and found Clark guilty. The evidence was sufficient for the jury to make this determination, and Clark's argument on this ground must fail.

## CONCLUSION

We are not persuaded by Clark's many assertions of error by the district court and arguments for reversal of his conviction. His conviction is therefore

AFFIRMED.

CUDAHY, Circuit Judge, concurring.

Because Judge Wood's opinion for the majority persuades me that Judge Rovner went to considerable lengths to assure herself that Clark knowingly and voluntarily waived his right to counsel, I think the result should stand in this case. We should not, however, lose sight of the fact that most circuits that have considered the matter appear to read *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), as imposing a higher standard of competence upon those defendants who seek to represent themselves than is required merely to put a defendant on trial. *E.g.*, *Blackmon v. Armontrout*, 875 F.2d 164, 166 (8th Cir.) ("The standard for determining whether a person is capable of making a knowing and intelligent waiver of the right to counsel is not coextensive with the test for determining competency to proceed to trial."), *cert. denied*, 493 U.S. 939, 110 S.Ct. 337, 107 L.Ed.2d 326 (1989); *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir.) ("We recognize that the degree of competency required to waive counsel is 'vaguely higher' than the competency required to stand trial."), *cert. denied*, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987); *Evans v. Raines*, 800 F.2d 884, 885 (9th Cir.1986) (competency to waive counsel "arguably requires a higher degree of lucidity and rationality" than

competency to stand trial); *Chapman v. United States*, 553 F.2d 886, 892 n. 10 (5th Cir.1977) ("[T]here may be a point of mental incompetency, short of inability to understand the nature of criminal charges, at which a defendant lacks the capacity to waive counsel and represent himself."); *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 133 (2d Cir.1975) (*Westbrook* "does indicate that the standard of competence for making the decision to represent oneself is vaguely higher than the standard for competence to stand trial."), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976). How exactly such a rule would apply to this case is not clear to me, but it is a question we should consider not entirely foreclosed in this circuit.